## WILSON v. WERRY. †

(Court of Civil Appeals of Texas. Dallas. April 29, 1911. Rehearing Denied May 13, 1911.)

1. NEGLIGENCE (§ 44*)—ERECTION OF BUILDINGS—CARE REQUIRED.

The construction of the floors of the corridors of an office building with unpolished marble slabs customarily used for such purposes in like buildings does not of itself show a failure of the owner to exercise due care to render the corridors safe for those who may lawfully use them, and one lawfully in the building may not recover for injuries caused by slipping on the floor of a corridor on mere proof of the character of the floor.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 59; Dec. Dig. § 44.*]

2. NEGLIGENCE (§ 134*)—ERECTION OF BUILDINGS—CARE REQUIRED.

In an action for injuries to a person lawfully in an office building caused by slipping on the floor of a corridor, evidence *held* not to show actionable negligence of the owner in failing to keep the floor dry and free from slippery substances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267-270; Dec. Dig. § 134.*]

3. NEGLIGENCE (§ 44*)—ERECTION OF BUILDINGS—CARE REQUIRED.

To authorize a recovery for injuries caused by slipping on the floor of a corridor of an office building while lawfully there, plaintiff must show not only the injury, but that the owner of the building was guilty of negligence producing the injury; and the negligence proved and the injury complained of must bear the relation of cause and effect.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 59; Dec. Dig. § 44.*]

4. NEGLIGENCE (§ 134*)—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

Negligence may be established by circumstantial evidence, but the inference of negligence must be a legitimate inference from the facts proved.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267-270; Dec. Dig. § 134.*]

5. APPEAL AND ERROR (§ 1175*) — DISPOSITION OF CASE ON APPEAL.

Where a case was fully developed on the trial, and there was no probability that plaintiff, failing to establish a case, could do so on another trial, the court, on reversing a judgment for plaintiff, will render judgment for defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573-4587; Dec. Dig. § 1175.*]

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by Adolph Werry against J. B. Wilson. There was a judgment for plaintiff, and defendant brings error. Reversed and rendered.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

Harry P. Lawther, for plaintiff in error. Etheridge & McCormick, for defendant in error.

TALBOT, J. This is an action to recover damages for personal injuries. The plaintiff in error, who will hereafter be called defendant, owned a large eight-story building in the city of Dallas, known as the Wilson Building, six stories of which were devoted to office rooms rented to persons having business with the public, the elevators, halls, and corridors of which were in the possession of and cleaned by defendant, through Temple, his manager, and a number of negro janitors and porters. The defendant in error, who was the plaintiff in the court below, and who will hereafter be referred to in this opinion as plaintiff, on the 10th day of August, 1908, went to the office of C. D. Hill & Co., architects, on the third floor of said building on business. He entered the building at the Main street entrance; took the elevator; got out at the third floor; walked along the main corridor on the west side of the building to the north transverse corridor; went down that to the office of C. D. Hill & Co.; transacted his business; and was proceeding back the way he came when in the main corridor, about half-way to the elevator, his feet slipped from under him, and he fell to the floor, breaking his arm and seriously injuring one of his legs. On October 17, 1908, he filed suit against plaintiff in error for $10,000 damages on account of the injuries claimed to have been sustained by him in said fall, grounding his action upon the following: (1) An implied invitation on the part of the owner of the building to use the same; (2) that at the time of said accident certain servants of the defendant were engaged with mops, brooms, and other tools and instruments in cleaning the wainscoting and floor of said corridor, by the use of soap and water, at a time when the same was in use for the passage of the inmates of said building and those having business with them; that the floor of said corridor was made of polished marble, exceedingly sleek and smooth, affording an unstable footing for those passing along, when dry, and which when damp or soapy became still more dangerous to foot passengers; (3) that defendant could have removed the sleekness and dampness thereof by covering said floor or dressing it with pumice stone; (4) that defendant was guilty of negligence in constructing the floor of said corridor of such smooth and sleek material without matting or covering, and in failing to remove the glaze or polish with pumice stone, and in permitting the same to become damp and soapy, and in failing to notify plaintiff of the dangerous condition thereof. The defendant answered by a general denial, and specially denying that the floor of the corridor where plaintiff fell was constructed of polished marble, and that at the time of the accident his servants or agents were engaged with mops, etc., in cleaning said floor with soap and water, and alleged that it was the custom of his said servants intrusted with the cleaning of said floor to leave the same clean and dry by 7:30 a. m. each morning, and that on the morning of the accident the floor had been cleaned and washed by 7:30 a. m.; that plaintiff met with his accident between 9 and 10 o'clock a. m., at which time the floor was dry and not wet or damp, and was no more smooth and slippery than a floor of such character usually is; that in the construction of said building the defendant had laid the floors of said corridor in plain unpolished marble, which was a material commonly and customarily used for such purposes in the construction of all first-class, modern office buildings; that, after the completion and occupancy of said building, defendant had employed an experienced and competent janitor whom he placed in charge of the cleaning and keeping in proper and sanitary condition the halls and corridors of said building; that on the date of the accident to the plaintiff the said janitor was in charge, and had under him a competent and efficient set of men; and that in the construction of the floors of said corridors of said building and in his employment of men to keep the same in a cleanly and sanitary condition, and in the manner in which his said servants performed their said duties, he conformed to what was ordinary and customary by owners of buildings of like character, and that the accident to plaintiff was not due to any negligence on his part; that, if at the time of the accident to plaintiff the floor of said corridor was in the dangerous condition alleged by plaintiff and unsafe for him to walk upon, the same was open, apparent, and obvious, and was known to him and understood by him, and he assumed the risk of walking upon the same; that while the floor of said corridor, being laid in unpolished marble, presented a smooth and even surface, yet the same was not more smooth than similarly laid floors in all first-class, up-to-date, and modern office buildings; that it was not ordinary and customary for floors of such character to be covered with matting to prevent persons from slipping and falling; that, if plaintiff slipped and fell upon said floor, it was due to a worn or one-sided heel on his footwear, or was contributed to by the same, or was an accident without the expectation or foreknowledge of defendant and was unanticipated by either defendant or plaintiff. A trial before a jury January 26, 1910, resulted in a verdict and judgment in favor of the plaintiff for $1,650, and the defendant appealed.

The first assignment of error complains of the court's action in refusing to give the defendant's requested charge directing the jury to return a verdict in his favor. The proposition asserted under this assignment is that the evidence was insufficient to sustain a verdict in favor of the plaintiff. That the

plaintiff slipped and fell, and was thereby injured, substantially, as alleged, is not questioned. Nor is it denied that the renting of the rooms in the building for the purposes for which they were rented constituted an invitation to those of the public having business with the occupants of said rooms to pass to and fro, in the discharge of that business, along the hallways and corridors. Neither is the well-settled rule of law that, when a person in control of premises invites another into or upon the premises, he owes to such person the duty of using ordinary care to keep the premises in a reasonably safe and suitable condition, so that he will not be unnecessarily or unreasonably exposed to danger. The contention is that the evidence is wholly insufficient to show that plaintiff's fall and injuries were the result of actionable negligence on the part of the defendant or any one of his servants. This contention, we think, should be sustained.

[1] The evidence was insufficient to authorize a recovery upon either of the grounds of negligence alleged. The construction of the floors of the corridors of the building with the character of marble with which the evidence shows they were constructed cannot be held to be a structural defect or of itself the failure on the part of the defendant to exercise that degree of care imposed upon him by law to render the corridors reasonably safe for the use of those who might lawfully have occasion to use them; and, giving the most favorable construction to the evidence and to the legitimate inferences to be drawn therefrom, we think it utterly fails to show that the defendant was guilty of negligence, in that he failed to keep the corridor where plaintiff fell in a reasonably safe condition for use. The floor of the corridor over which plaintiff was passing when he fell was not made of polished marble, as alleged by plaintiff, but, like the floors of all the other corridors of the building, was constructed of unpolished marble slabs, about twelve by fourteen inches in size, fitted closely together, which had been dressed with pumice stone. Of such material and in a similar manner have been laid the floors of a great many large buildings throughout the country. Indeed, the evidence is without contradiction that such material as was used in the construction of the floors of plaintiff's building is usually and customarily used for such purposes in buildings of like character.

[2] The uncontradicted evidence shows that defendant at the time plaintiff was hurt had in charge of the cleaning of his building a competent janitor of many years' experience, and that the manner in which such cleaning was done conformed to what is usual and customary in similar buildings in other cities. The failure to place rubber matting or some other covering on the floor cannot be accounted negligence. According to the undisputed evidence it is not usual or customary for the owners of buildings, the floors of which, like the defendant's, are laid in un-

polished marble, to place any character of covering upon the floors. In fact, the same is not done for the reason that the corridors of such buildings are traversed, as is the defendant's building, by several thousand people daily, and any covering on the floors is regarded as unsanitary. The floors of the corridors of defendant's building were cleaned daily with a solution of soap, soda ash, and water. This solution was applied to the floor with mops, after which they were rinsed off with clear water and the soap removed. This work was commenced about 5 o'clock a. m. and finished not later than 7:30 a. m. each morning. It was so finished on the morning plaintiff fell. The accident happened somewhere between 10 and 11 o'clock a. m., and at the time it happened there was no water on the floor. It was then perfectly dry. Some of the janitors or porters were at the time washing the windows in some portions of the corridor, but none were engaged in washing floors, and there was no defect in the floor. No witness testified that at the spot where the plaintiff slipped and fell there was any water, soap, or other foreign substance of a slippery character.

Mr. Werry, the plaintiff, testified: "On August 10, 1908, I was in the Wilson Building for the purpose of seeing C. D. Hill & Co. in regard to the sale of some ceilings, and their offices were on the third floor of the Wilson Building, and, to get to their office, I entered the building at the Main street entrance and went up in the elevator and went to the office to see Mr. Hill, and, on returning, I went back the same way that I came. I had been in to see Mr. Hill before anything occurred, and I saw him and transacted my business with him, and then I attempted to return to the elevator at the Main street entrance for the purpose of leaving the building. I passed out of the first corridor on the north, and then down the corridor that runs north and south on the west side of the building, and, as I passed down that corridor, I saw several negroes. I do not know how many, probably three or four, and I paid very little attention to them. They were washing up the hallway. I know they had quite a number of mops setting there in the north part of the building where the toilet room is located, and in walking on through I had to walk between them on down the corridor. I do not remember of seeing them as I went into the hall previously, but it was as I came out that I saw them. They seemed to be working or facing towards the north, and I was going south. They seemed to be working from the south towards the north and I was coming from the north toward the south; and, after passing them, I suppose I had gotten by them probably 30 feet or so—I do not know the exact distance—when I slipped and fell. I fell in the corridor about the center of the building, in that main north and south corridor. I was walking down the corridor just like a person would natu-

rally walk around anywhere in a hallway, and suddenly my feet slipped out from under me as if I had stepped on a banana peeling. Both of my feet flew out from under me just like that [indicating a snap], and I fell backward, and in falling backward I suppose I was in about four feet of the wall to my left, and I threw out my hands to catch myself, and, of course, I was too far to break the fall in falling, and I fell and caught my weight on my right arm. I don't know hardly how to express the sensation I felt in falling, only if you ever slipped on a banana peel you would realize what it is. I had before that time stepped on ' banana peels myself, and it just looks like everything is going out from under you. It is very slippery. There was no banana peel there, though, at that time. There was no one with me at the time I fell. I had on a pair of shoes that day, and the condition of the heels and soles were in very good condition. I had just bought the shoes—I hardly know when before that, but along in the early part of the summer. After I fell, I started to raise myself up, and, of course, this right arm being down back like this, I could not do it, and it pained me. I thought it was broken, and a gentleman came running to me and picked me up, or started to pick me up and he says, 'Are you hurt?' and I says, 'I believe my arm is broken.' I did not know the gentleman at the time, but have since learned that it was the gentleman who was on the witness stand this morning, Mr. Cougahnour, and after I had that talk with him I became unconscious, and did not know anything. I had been in the Wilson Building before. I have lived in Dallas about 15 years, and I do not have any idea how many times I had been in the Wilson Building before this occasion—I had been up there frequently to see architects before this, and had walked through that corridor frequently before this. I never had any difficulty in walking over that floor, only a person had to be more careful in walking on that floor than any other floor, and this thought came to me unconsciously as I was walking over the floor, and the condition of the floor made itself known—it would have to any one through their perception. When I came out of the architect's office, I first came down one of those transverse halls that runs east and west and went on to the main corridor that runs north and south, and, after I got out in the main corridor, I saw the negroes there, working. They were working in the main corridor or hall nearer the north end of it, somewhere near those little rooms on the west side of the corridor at the north end. They had some buckets and mops there, and I suppose they were scrubbing the floor; but I do not know whether they were or not. I did not pay any attention to them particularly, and I do not know whether the floor was wet or not, as I did not pay any attention to that particularly. The negroes seemed to be working toward the north, and about the only thing that I remember about them was that one of them had a mop—one of these long-necked mops, and seemed to be wringing it into a bucket, but I did not pay enough attention to him to tell just what he was doing. I did not notice whether the floor had just' been mopped or not. I was just walking along there, and all at once my feet flew out from under me—apparently just like I had stepped on a banana peel or something like that—just like on something very sleek. There was no banana peel on my heel or shoes that morning; had not stepped on a banana that morning anywhere that I know of. I do not know where the shoes I had on that morning are now. After I got up from my bed, I wore the shoes until in the fall, or cool weather, and then I put them away, and think a negro got them, and I asked him about them yesterday, and he told me his wife had worn them out. I had bought the shoes I think that June before—in the summer. They were just a summer pair of low quartered shoes, and I had worn them until August. I do not run shoes down at the heel, and I do not think that these shoes were worn very badly. I considered them in very good shape."

Now while the plaintiff, as shown by the above quotation from his testimony, stated at one time that the negroes he saw as he passed down the corridor "were washing up the hallway," yet it is made absolutely clear from other portions of his testimony that he did not see the negroes washing the hallway, but that his statement to that effect was merely his opinion or conclusion drawn from the fact that there were negroes working in the main corridor near its north end, and that there were some buckets and mops there. After stating that the negroes and buckets and mops were in that end of the corridor, he said: "I suppose they were scrubbing the floor, but I do not know whether they were or not. I did not pay any attention to them particularly," etc. On the other hand, several witnesses for the defendant testified positively that the negroes seen by the plaintiff were at the time he saw them engaged in the work of cleaning some windows in the corridors, and probably washing off the wainscoting, which was of polished marble, with clear water, and were not then washing or scrubbing the hallway; that it was the rule and custom in cleaning to mop the floors of the corridors between the hours of 5 and 7:30 o'clock a. m. each morning, and that this work was done and finished on the morning of the accident by 7 o'clock, or at least two hours before the accident occurred; and that at the time it occurred the floor where plaintiff slipped and fell was perfectly dry. That more than one of the witnesses introduced by the defendant so testified or that no other reasonable deduction can be drawn from their testimony cannot be escaped. It is contended, however, that the testimony of the plaintiff is sufficient to warrant the conclusion that there was negligent-

ly left on the floor where plaintiff slipped and fell by the defendant's servants a "soapy solution, or some. other foreign slippery substance, which was the proximate cause of his fall and injury," and this contention is sought to be sustained by the able counsel for plaintiff in an ingenious argument. It is said that, while the sense of sight and hearing are usually the means of communicating to the mind the facts of phenomena, they are not the only senses of consciousness or vehicles of observation; that while they may be, under most circumstances, the most reliable means at the command of the individual for acquiring information, there arise circumstances in life where they are not available, and resort must be had to the use of other senses, the report of which to the mind constitutes knowledge in as true a sense as does the report of the eye or ear; that the nature of the foreign substance on the floor where plaintiff slipped and fell was difficult, if not impossible, of detection by the eye, because of the white marble floor, and so that the sense of touch would be the sense used for the observation of the substance which caused plaintiff to fall. Therefore the testimony of plaintiff is to a fact which he knows from his sense of touch, and which he knows in just the same way as if he knew it from the use of faculties of sight and taste had they been made use of to communicate this fact to his mind and consciousness, and that fact is that there was upon the floor at the point where he fell a substance having properties similar to a banana peel. If it be conceded that in a proper case this argument is logical and leads to the conclusion claimed for it, still we think it is inapplicable, and cannot be made available in the present case. The argument is predicated upon the statement of the plaintiff to the effect that "suddenly my feet slipped out from under me as if I had stepped on a banana peeling. I don't know hardly how to express the sensation I felt in falling, only if you ever slipped on a banana peel you would realize it. I had before that stepped on banana peels myself, and it just looks like everything is going from under you. It is very slippery." It seems quite clear to us that it cannot reasonably be said from this or any other testimony in the case that by the act of slipping and falling there was communicated to the mind and consciousness of the plaintiff, through his sense of touch or otherwise, as a fact, the presence of some foreign slippery substance on the floor where he fell. He was wearing at the time he slipped and fell shoes that would prevent that sense of touch necessary to detect any foreign slippery substance, if there was any of the character claimed, on the floor, and his testimony must be construed to mean that he simply experienced on the occasion in question that sensation which is ordinarily produced by, or incident to, any sudden and unexpected slipping and falling similar to the fall plaintiff received. Any such slipping and falling and the sensation created thereby might be likened unto that resulting from the slipping on a banana peeling. Such was the sensation experienced by plaintiff, but the unreliability and insufficiency of such a sensation to establish as a fact the presence of a banana peel where he fell is illustrated in the instant case, because it is conclusively shown by the testimony of plaintiff himself that there was no banana peeling where he slipped and fell. Such testimony is, therefore, too lacking in probative force to authorize a finding that there was some character of foreign slippery substance on the floor where plaintiff fell. It is just as reasonable to conclude, since plaintiff had on his shoes, and the knowledge which he might otherwise have obtained by the sense of touch, as to whether or not there was a slippery substance on the floor, could not be acquired, that the character of the material used in constructing the floor caused plaintiff to fall as that it was due to some such substance. We are unable to perceive under the circumstances shown that there would be any difference in the sensation created by the sudden slipping and falling as a result of the character of the material in the floor and that created by the slipping and falling in consequence of some slippery substance on the floor.

Our conclusion is that the evidence was wholly insufficient to authorize a recovery; that plaintiff's fall and injuries must be attributed to an accident which could not reasonably have been anticipated by the defendant, and for which in law he is not required to respond in damages.

[3] It is well said that, to entitle a plaintiff to recover in an action of this character, he must show, not only that he has sustained an injury, but that the defendant has been guilty of some negligence which produced that injury. The negligence alleged and the injury sued for must bear the relation of cause and effect. It is not absolutely essential that direct proof of the negligence should be made.

[4] Negligence, like any other fact, may be established by proof of circumstances from which its existence may be inferred; but this inference must, after all, be a legitimate inference and not a mere speculation or conjecture. The evidence in the case at bar does not meet the requirements of this rule and the verdict and judgment rendered upon it must be set aside.

[5] It is also apparent that the case has been fully developed and that there is no probability that plaintiff's case can be strengthened on another trial. It therefore becomes our duty under the statute to render such judgment in this court as should have been rendered in the court below. It is therefore ordered that the judgment of the district court be reversed and that judgment be here rendered for the defendant.

Reversed and rendered.