(No. 6534. July 19, 1938.)

CHARLES B. HERRICK and MARGARET J. HERRICK, Husband and Wife, Respondents, v. C. J. BREIER, Sr., Appellant.

[82 Pac. (2d) 90.]

Cox, Ware & Stellmon and Earle W. Morgan, for Appellant.

P. E. Stookey and Benjamin F. Tweedy, for Respondents.

GIVENS, J.—Mrs. Margaret J. Herrick, one of respondents herein, on December 31, 1936, at 11 A. M., entered the Breier Building in Lewiston, took the elevator to the fifth floor and starting along the hall toward Dr. Briley's office, some 36 feet from the elevator, slipped and fell causing a fracture of her left wrist and femur and three ribs, and she and her husband sued herein to, and did, recover damages therefor from appellant, owner of the building.

It is contended appellant may not question the sufficiency of the evidence to sustain the verdict for the reason that no motion for directed verdict or new trial was made.

Section 7–509, I. C. A., provides that a transcript complying therewith shall "be deemed adequate to present for review any ruling appearing therein to have been excepted to, or by statute deemed excepted to, or any question of insufficiency of evidence which may afterward be properly presented by specification of insufficiency in the brief on appeal." Section 7–502, I. C. A., specifically provides that the verdict of the jury and final decision are deemed excepted to. This question was before the Supreme Court in *Buster v. Fletcher*, 22 Ida. 172, 179, 125 Pac. 226, where it was held:

"Such transcript (as provided for in 7–509, I. C. A.) may be used either on an appeal from the final judgment, as provided for by section 4818 (now 11–212, I. C. A.), or on an

appeal from an order denying a new trial; *and if used on appeal from a final judgment, such transcript has the force and effect of a bill of exceptions* duly settled and allowed and is adequate and sufficient to present for review on such appeal any ruling appearing therein to have been excepted to, or by the statute deemed excepted to *or any question of insufficiency of evidence which may afterward be properly presented by specification of insufficiency in the brief on appeal.*

"We therefore conclude that on an appeal from a final judgment, if the appellant furnishes the appellate court with a copy of the notice of appeal, of the judgment-roll provided by sec. 4434 (7–509, I. C. A.), and the question of insufficiency of the evidence is properly presented by specification of such insufficiency in the brief on appeal, the appellate court has full and sufficient power and authority to determine whether the evidence is sufficient to support the findings of the verdict." (Emphasis ours.)

To the same effect, see, *Newport Water Company v. Kellogg,* 31 Ida. 574, 578, 174 Pac. 602; *Marnella v. Froman,* 35 Ida. 21, 25, 204 Pac. 202; *McKinlay v. Javan Mines Co.,* 42 Ida. 770, 774, 248 Pac. 473; *Morton v. Morton Realty Co.,* 41 Ida. 729, 241 Pac. 1014.

 The transcript herein contains the trial judge's order to the official reporter to prepare "a complete transcript of all the testimony and proceedings had before me in the above entitled cause in accordance with law and in accordance with the rules of the Supreme Court of the State of Idaho." The clerk's certificate certifies that the transcript "is a true and correct transcript of the proceedings therein contained," and thus, with the reporter's certificate, meets the requirements of the statute.

The "assignments of error" in the appeal brief are:

"The verdict in favor of the respondents is contrary to law and against the evidence for the reason that the evidence does not establish any negligence upon the part of the appellant which would render the appellant liable for the injuries sustained by the respondent, Margaret Herrick, the

evidence being insufficient and inadequate to sustain the verdict for the following reasons:

"(a) The undisputed evidence shows that the floor on which the respondent fell was of flooring in common use.

"(b) The undisputed evidence shows that the preparations used in treating and caring for the floor were preparations prescribed and recommended by the company and was the method in general use.

"(c) The evidence fails absolutely to show that the floor was of unusual or extraordinary composition.

"(d) The evidence introduced by the respondent fails utterly to show that there was any water, snow, ice, oil, wax, grease or other material negligently left by the appellant or permitted by the appellant on the floor.

"(f) The evidence conclusively shows that the respondent was thoroughly acquainted and familiar with the floor and that its condition was known and obvious to her at the time of the accident.

"(g) The undisputed evidence shows that the floor has been used for 15 years prior to the accident without anyone having fallen thereon.

"(h) The evidence fails to show any notice to the appellant of these alleged dangerous conditions of the floor."

They point out in detail the particulars in which it is claimed the evidence is insufficient to support the verdict and when taken in connection with the entire brief leave no doubt as to what questions are urged on appeal, and are, therefore, sufficient. (*Hoy v. Anderson*, 39 Ida. 430, 431, 439, 227 Pac. 1058; *Marnella v. Froman, supra; Thibadeau v. Clarinda Copper Min. Co.*, 47 Ida. 119, 126, 272 Pac. 254.)

The complaint alleges:

" . . . . The floors of each of said halls or vestibules (i. e. of the Breier Building) are made of an extraordinarily unusual composition and have surfaces when polished as hereinafter stated, on which to walk of extraordinarily unusual smoothness, slickness and slipperiness making them extraordinarily and unusually unsafe and dangerous to walk over or upon. . . . . "

This is the basic and only ground of negligence.

The testimony of Mrs. Herrick is that there was snow on the streets and it was storming at the time the accident occurred, but there is no evidence that the fifth floor of the building was wet, or that the accident was caused by the presence of any foreign substance such as dirt or excessive oil or wax on the floor. Appellant's evidence that the floor was clean and well cared for is undisputed and leaves nothing from which the jury was justified in inferring that the cleaning was carelessly done or that an excessive amount of cleaning compound was used on the morning of the accident.

The only evidence as to the composition of the flooring was given by the witness Henry Hostetler, who was in the business of selling and laying such floors, including the floor in question, and testified in part as follows:

"Q. What kind of flooring is the floor of the Breier Building? I am referring particularly to the fifth floor of the building.

"A. Well, it is a magnesite composition flooring. Magnesite is made from rock that comes from Chewela, and it is what they call composition, and we add asbestos and different ingredients to make it a little softer, so it will stand the wear of a wood floor and have more resilience. We put it over tile or concrete, and when you walk on it why it sounds like wood but it is softer.

"Q. Why do you put it over concrete, Mr. Hostetler?

"A. It is easier to walk on; more like linoleum; not so hard.

"Q. Are magnesite composition floors, such as this floor in the Breier Building in general use?

"A. Yes, it is used in school buildings, offices, kitchens, bath-rooms.

"Q. Is it used in any office buildings in Spokane that you know of?

"A. Yes. Oh, there are about one hundred twenty-five different buildings up there got magnesite floors in. The Medical Building has it throughout.

"Q. Is magnesite flooring used anywhere else in Lewiston than the Breier Building, do you know?

"A. Oh, about seven or eight different places down here that I know of.

"Q. What places, for instance?

"A. I put some in the Raymond Hotel; and one of these dormitories up here, I think it is the Boys' Dormitory. I put that in in 1923. I put that in there on the steps and halls only—the stair steps."

As to the nature of Pore-Fill and Dust-Layer used on the floor, Stanley Felber, salesman for the company which sold these compounds, testified as follows:

"Q. Did you sell them (appellant) a material called Pore-Fill?

"A. Yes.

"Q. And a material called Dust-Layer?

"A. Yes.

"Q. I wish you would state to the jury the nature and characteristics of Pore-Fill, and the purpose of its use.

"A. Well, Pore-Fill as connected with magnesite floors, is applied as a seal primarily, after the magnesite has started to deteriorate to some extent, and perhaps to allay dust a little bit. The Pore-Fill will seal it and stop further deterioration of the floor. That is the main purpose of it.

"Q. What kind of a surface does it make?

"A. Well, I don't believe that it would change the surface materially from what it was originally.

"Q. You say that the magnesite floor would be substantially the same before and after the Pore-Fill.

"A. Approximately, yes.

"Q. And Pore-Fill is applied to keep the floor from deteriorating.

"A. Yes, Pore-Fill is a penetrating agent. It penetrates into the magnesite and doesn't as a rule put any great amount of surface on top of the magnesite.

"Q. What is this product called Dust-Layer?

"A. Well, it is also a chemical manufactured by the West Disinfectant Company and intended as a cleaner. It is used on mops as a mop treatment to give the mops a dry quality of picking up and holding dust, which a dry mop would

not have, and it also imparts a cleaning action on the floor as the mop goes over it.

"Q. Were you in the court room when Mr. Breier testified as to how this Dust-Layer was applied to the fifth floor of the Breier Building?

"A. Yes.

"Q. And when Mr. Robinson testified—

"A. Yes.

"Q. As to the manner of its application?

"A. Yes.

"Q. Was that application in the manner recommended and prescribed by your company?

"A. Yes, that fulfills all requirements.

. . . . . . . . . . . . . .

"Q. Now, is this Dust-Layer similar to gasoline as a cleaning agent?

"A. Well, I can't testify as to what Dust-Layer may be. It is a chemical formula that is known only to the Company heads themselves and is not disclosed to the salesmen, but it is a volatile material of some kind. It might be similar to gasoline.

"Q. By volatile what do you mean?

"A. Well, I mean it evaporates when it is exposed to the air. It evaporates quite rapidly."

On cross-examination Felber testified as follows:

"Q. Now when you rub that (Dust-Layer) over the floor what does it leave on the floor?

"A. Well, it leaves nothing on the floor. It cleans your floor.

"Q. Doesn't it leave any of the liquid on the floor?

"A. It isn't supposed to.

"Q. Well, you said something about it being volatile.

"A. Yes.

"Q. What is the meaning of that? Just what do you mean by that?

"A. Well, perhaps I can illustrate it by saying that if you pour a little alcohol on a cloth and rub the cloth over the surface of a table, why you might apparently have a

slight dampness, but alcohol, being volatile, it would be almost immediately gone, wouldn't it?

"Q. Well now, if it is volatile and you put it on the brush and leave it over night, won't some of it evaporate from the brush?

"A. Yes, it will evaporate but because it is mostly contained in the fibers of your brush and your brush is quite a mass it holds a certain amount in there.

"Q. What is there about it that takes up the particles of dust when you run it over the floor?

"A. Well, I think primarily because it does give your mop a slight chemical treatment that takes up and holds the dust.

"Q. And you say it doesn't leave anything on the floor,— that is, any liquid or anything on the floor.

"A. No."

The only evidence as to how the Dust-Layer and Pore-Fill were actually applied to the floor was the testimony of Mr. Robinson, janitor for the building, called by the respondents, and C. J. Breier, Jr., manager of the building, witness for appellant. Both testified that Pore-Fill was used but once, and that was about August or September, 1936. The witness Breier corroborated the following testimony of the witness Robinson as to how the Dust-Layer was actually applied:

"Q. Will you state, Mr. Robinson, just how this Dust-Layer is applied to the fifth floor of the Breier Building?

"A. It is a large mop, I should say thirty-six inches across, or almost a yard wide, with quite an amount of filler in it, that is in the rag substance of the mop, and every three days we apply about half a glass of what is called Dust-Layer on to the mop, and use it on the floor every morning.

"Q. In relation to the time that you use the mop on the floor when do you put this Dust-Layer on the mop?

"A. I put it on the night before so it will soak in evenly into the mop and be well distributed on the mop and will go on the floor evenly. It is done the night before.

"Q. And then what time of day do you mop the floor, on the fifth floor of the Breier Building?

"A. That is about eight o'clock in the morning; from eight to nine in the morning. It varies, according to my duties."

Respondents contend the jury were justified in finding negligence from the testimony of Mr. Breier to the effect that Pore-Fill *could* be put on in excessive quantities. This testimony is as follows:

"Q. How do you put it on?

"A. You can mop it on with a mop or you can put it on with a brush.

"Q. You can put on different quantities, can you?

"A. You can spray it on, I imagine.

"Q. You can put it on in different quantities at different times?

"A. You can put it on very heavy or very light, the same as you could paint.

"Q. Well, when you put it on very heavy it fills up the pores more, doesn't it?

"A. Hardens the floor?

"Q. Yes.

"A. No, I don't think that is the purpose of it, to harden the floor; just to fill the pores, to keep the dirt out; so the dirt won't grind in.

"Q. You wouldn't say that Pore-Fill didn't harden the floor, would you?

"A. No, I wouldn't say it did or didn't, because I am not qualified to say."

The mere assertion of a *possibility* of faulty application will not support a verdict of negligence in the face of direct evidence that the material was properly applied, and that it had no material effect in making the surface of the floor slick or slippery.

If the floor was unusually slick and slippery it was thus not because of any negligent act or omission of the appellant in caring for the building but because of the inherent nature of the material of which the floor was made. Respondents having failed to show the presence of any foreign substance which could have caused the floor to be unsafe, the remaining question is whether or not the jury was justified in finding and concluding from the fact that Mrs. Herrick did fall

while walking upon the floor that such floor was unsafe and that its maintenance in the manner here alleged was of itself negligence.

We have found no cases involving this particular type of floor but after careful study of the cases involving similar floors we are convinced that a mere showing that respondent fell or slipped on the floor is not of itself a showing of negligence, under *res ipsa loquitur* or otherwise.

*Knopp v. Kemp & Hebert*, 193 Wash. 160, 74 Pac. (2d) 924, 926, was a similar case to the one at bar. There the plaintiff fell on the arcade of the defendant's department store. The floor in that case was constructed of terrazzo, a composition of cement and marble chips. There was a directed verdict for defendant in the lower court and this was affirmed on appeal, the court saying:

"Walking, although it becomes automatic by long practice and use, is, after all, a highly complicated process. The body balance is maintained by the co-ordination of many muscles, and their operation is controlled by an intricate system of motor nerves, the failure of any of which for a split second on account of advancing age or for some other reason, may cause a fall. It is common knowledge that people fall on the best of sidewalks and floors. A fall therefore, does not, of itself tend to prove that the surface over which one is walking is dangerously unfit for the purpose."

"Now, it will be noted that the premises in question in this case, upon which the plaintiff was invited to enter and where the accident happened, was the floor of the basement of defendant's department store. It was made of solid concrete composition, such as the floors of bank buildings, and it does not appear that the plaintiff slipped upon any foreign substance in the fall which she sustained and which injured her. The floor was undoubtedly smooth, but, apparently, was not slippery, as it had been traversed by thousands of people every week the four years since its construction, and no one had been known to slip there before. It would thus appear that the premises were reasonably safe for the entry thereon of persons resorting to the store, and it is not shown that the defendant was guilty of any act which

would make them dangerous. In fact, there is no contention to that effect.

" . . . . In our opinion a non-suit, and, failing that, a direction of a verdict for the defendant should have been ordered at the trial." (*Garland v. Furst Store*, 93 N. J. L. 127, 107 Atl. 38, 39, 5 A. L. R. 275.)

See, also, *Tryon v. Chalmers*, 205 App. Div. 816, 200 N. Y. Supp. 362, 363; *Wilson v. Werry*, (Tex. Civ. App.) 137 S. W. 390, 392; *Mullen v. Sensenbrenner Mercantile Co.*, (Mo.) 260 S. W. 982, 33 A. L. R. 176; *Taylor v. Roth & Co.*, 102 N. J. L. 702, 133 Atl. 386; *Belles v. City of Tacoma*, 79 Wash. 200, 140 Pac. 324, 326; *Ilgenfritz v. Missouri Power & Light Co.*, 340 Mo. 648, 101 S. W. (2d) 723, 727; *Bodine v. Goerke Co.*, 102 N. J. L. 642, 133 Atl. 295; *Thompson v. Young Men's Christian Assn.*, 122 Neb. 843, 241 N. W. 565, 567; *Abt v. Leeds & Lippincott Co.*, 109 N. J. L. 311, 162 Atl. 525; *Stein v. Buckingham Realty Co.*, (Mo.) 60 S. W. (2d) 712, 714; *Abbott v. Richmond Country Club*, 211 App. Div. 231, 207 N. Y. Supp. 183, 184; *Richmond v. Stanley Mark Strand Corp.*, 241 App. Div. 633, 269 N. Y. Supp. 970, 971; *Wentz v. J. J. Newberry Co.*, 152 Misc. 392, 273 N. Y. Supp. 449, 451; *Zalkin v. Steeplechase Amusement Co.*, 237 App. Div. 829, 260 N. Y. Supp. 992; *Lyons v. Lich*, 145 Or. 606, 28 Pac. (2d) 872.

This floor had been in use for 15 years and respondents failed to show any other instance of a person having fallen thereon. Mrs. Herrick had been on the fifth floor of the building some eighteen times herself during the year immediately preceding the accident.

Respondents cite many cases holding generally the question of negligence is for the jury where people have slipped and fallen on floors. But in those cases there was evidence that the floor had recently been waxed or oiled, or mopped and was wet; that the fall was caused by the presence of some foreign object left on the floor; or that the floor was out of repair and in a defective condition. We find no case holding that evidence of a single fall on a floor of this general character is sufficient showing of negligence to take the

case to the jury. The evidence herein, therefore, is insufficient to support the verdict or judgment.

This solution of the case makes it unnecessary to consider whether or not it was error for the trial court to refuse to permit the jury to view the premises.

Judgment reversed with directions to enter judgment for appellant. Costs to appellant.

Holden, C. J., and Morgan and Budge, JJ., concur.

Ailshie, J., did not participate in the decision of this case.

Petition for rehearing denied.