(No. 6710. December 14, 1939.)

LAVERNE MAULDIN, Surviving Widow of JOHN LEWIS MAULDIN, Deceased, Appellant, and STATE ex Rel. CALVIN E. WRIGHT, State Auditor, Respondent, v. SUNSHINE MINING COMPANY, a Corporation, Respondent.

[97 Pac. (2d) 608.]

Robert E. Brown and Eugene S. Ware, for Appellant.

H. J. Hull, for Respondent Sunshine Mining Company.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for Respondent State.

BUDGE, J.—June 24, 1938, John Lewis Mauldin, employed at the mining property of respondent Sunshine Mining Company, received a personal injury by accident arising out of and in the course of his employment resulting in his death. Under the provisions of section 43–1101, I. C. A., as amended by chapter 147, 1935 Session Laws, the state auditor filed claim for $1,000, alleging deceased had no dependents. Appellant Laverne Mauldin also filed claim alleging she was the surviving widow of the deceased, which allegation was denied, this being the only issue presented to the board, the board's finding thereon being as follows:

"The claimant, Laverne Mauldin, claims to have been the wife of the said John L. Mauldin by virtue of an alleged common law marriage between herself and the said John L. Mauldin, but the Board expressly finds that the claimant has failed to prove such marriage and expressly finds that the said Laverne Mauldin was not the wife of the said John L. Mauldin at the time of his injury and death aforesaid."

Appellant's five specifications of error recited that "The Industrial Accident Board erred" "in entering its

Findings of Fact" "V" and "VI," "in entering its Rulings of law 1" and "II" and "in entering its award in favor of the State of Idaho and disallowing the applicant's claim of dependency." Respondents urge that none of these specifications of error meet the requirements of the rules and decisions of this court as it cannot be determined from them wherein the findings, rulings or award are in error. The specifications of error however are thoroughly discussed in the body of appellant's brief (and likewise in respondents' briefs) and are supported by relevant authority and no difficulty is experienced in ascertaining appellant's position to be that there was no competent or substantial evidence before the board to support the findings and rulings specified and the award. This court will therefore not refuse to consider the appeal. (*Rowe v. Northern Pac. Ry. Co.*, 52 Ida. 649, 17 Pac. (2d) 352; *Herrick v. Breier*, 59 Ida. 171, 82 Pac. (2d) 90; *Berg v. Carey*, 40 Ida. 278, 232 Pac. 904; *Mountain States Implement Co. v. Arave*, 49 Ida. 710, 291 Pac. 1074; *Thibadeau v. Clarinda Copper Min. Co.*, 47 Ida. 119, 272 Pac. 254; *South Side Live Stock Loan Co. v. Iverson*, 45 Ida. 499, 263 Pac. 481; *McClellan v. Davis*, 45 Ida. 541, 263 Pac. 1002; *Hoy v. Anderson*, 39 Ida. 430, 227 Pac. 1058; *Marnella v. Froman*, 35 Ida. 21, 204 Pac. 202.)

The evidence submitted may be said to be virtually without conflict. The witnesses were not in disagreement and the facts presented by the evidence were not at variance or conflicting. Appellant testified that she was the wife of John Mauldin, having been married, without a ceremony or procurement of license, in September, 1937, and that this relationship continued until John Mauldin's death. It appears unquestioned that John Mauldin supported appellant, buying all her clothes and that she had to pay no room rent or board, and bought no clothes with her own money. At the time appellant commenced to live with John Mauldin he lived, and had been living for approximately a year previous thereto, at the Harris Hotel. Appellant lived with him there regularly for three weeks, cohabiting as man and wife. It appears that Mrs. Conlon, a sister of appellant, knowing of the fact that appellant and John Mauldin were living together at the Harris Hotel became angered and called upon Mrs. Harris

telling her that she had to make appellant and John Mauldin get out, whereupon, after words to such effect by Mrs. Harris, appellant and the deceased moved therefrom to the Gem Hotel on November 27, 1937, John Mauldin signing the hotel register ''John Mauldin and wife,'' Mrs. Squance the proprietor considering them as man and wife. From that time on their residence at the Gem Hotel was continuous, John Mauldin paying the hotel bill. Frank M. Tessin, a tailor, testified that appellant had cleaning and pressing done at his establishment on John Mauldin's credit; that John Mauldin first brought ladies apparel to be cleaned in September or October; that appellant herself brought work in to be done, and that they came in together two or three times. The account, carried in the name of John Mauldin, was paid for by both. John Mauldin mentioned his wife to Tessin, referred to appellant as his wife, the first time saying ''his old lady.'' A few days after John Mauldin was killed appellant paid the bill he then owed. Mrs. Doris Conlon, sister of appellant, and Tom Conlon her husband, both testified that about January 25th, 1938, John Mauldin at their home said ''You don't have to be mad at me any longer because I'm really your brother-in-law now'' ''we went to Washington and got married and that is why I haven't been to see you.'' Both Mr. and Mrs. Conlon thought they were married. Mrs. Conlon stated that in her presence they represented themselves to other persons to be husband and wife, that she accepted them in her home and they were introduced as Mr. and Mrs. Mauldin. Mr. Conlon stated that several times in the restaurant they were introduced to people as Mr. and Mrs. Mauldin, John Mauldin himself making the introductions. George and Mrs. Lutich testified to similar effect that about July 2d or 3d the Lutichs and his brother-in-law being present at the Gem Hotel in the quarters occupied by appellant and John Mauldin, John Mauldin introduced appellant to them as his wife. Myrtle Murphey, residing at the Gem Hotel stated that on Easter appellant was introduced to her by Mrs. Squance as Mrs. Mauldin. During the period involved appellant worked at Chet's Cafe for three weeks using the name Laverne Lee, the reason given by her being that they did not permit married women to work there. Chester Trosper the owner of Chet's Cafe

testified that he had made no ruling that married women could not work in his cafe and that prior to appellant's working there she and John Mauldin boarded at his cafe, John Mauldin paying the board bill, and that after she worked there they continued to board there under the same arrangement. The showing on the part of respondent in addition to that set forth above was to the effect that appellant and John Mauldin were not registered as man and wife at the Harris Hotel; that to a deputy collector of Internal Revenue John Mauldin had stated he was a single man in 1938, with reference to his failure to make an income tax return for the year 1936; that periodical and re-employment records of the Sunshine Mining Company, prepared by physicians and employees of the company and signed by John Mauldin disclosed that he was a single man and likewise a bonus record with reference to a bonus received by John Mauldin showed him to be single in 1938, and there is testimony of Grace Garner an employee of the Sunshine Mining Company, a time keeper, that lots of difficulty was encountered in making employees give reports as to when they were married and that it was not unusual that John Mauldin did not keep her supplied with information as to his marital status. There is also evidence that appellant had gone out with one Myers, a friend of John Mauldin, while Mauldin was working night shift and had been at times known as Laverne Lee. It further appears that John Mauldin was advised by appellant of her going out in the company of Myers and others and that this was agreeable to and urged by him. There was further evidence, conceded by appellant that she had been married to one White until in 1935 and that she was married to one Albert Lee, July 6, 1935.

The manner in which a marriage, ceremonial or otherwise, may be consummated in this state is provided by statute. Section 31–201, I. C. A., is as follows:

"Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties or obligations."

Section 31–203, I. C. A., provides:

"Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." (*Huff v. Huff*, 20 Ida. 450, 118 Pac. 1080; *Smith v. Smith*, 32 Ida. 478, 185 Pac. 67; *Estate of Tormey*, 44 Ida. 299, 256 Pac. 535.)

It would appear from respondents' argument that they rely upon an assumption or presumption that the relation between appellant and John Mauldin was illicit in its inception, and therefore the presumption is that the illicit relation continued, so that the burden was upon appellant to overcome the presumption and establish a marriage. This assumption that the relationship between appellant and John Mauldin was illicit in its inception is based upon the premise that the evidence introduced shows that the parties did not consider themselves to be man and wife and did not so hold themselves out to the world. The record discloses the following from the testimony of appellant with reference to the relationship which existed between herself and John Mauldin:

"Q. What relationship existed between yourself and John Mauldin during his lifetime? . . . .

"A. I was his wife.

"Q. When were you and John Mauldin married?

"A. In September.

"Q. What year?

"A. 1937.

"Q. Did that relationship exist at the time of his death?

"A. Yes, sir."

Upon cross-examination the following appears:

"Q. Where did John Mauldin live at the time you married him?

"A. At the Harris Hotel.

"Q. In Wallace?

"A. Yes.

"Q. How long after you were married did he continue to live at the Harris Hotel?

"A. Almost three weeks.

"Q. Did you live with him at the Harris Hotel?

"A. Yes. For three weeks before we moved.

"Q. Regularly or just occasionally?

"A. Regularly.

"Q. Cohabited there as man and wife? You lived with him and was his wife?

"A. Yes, sir."

There is no showing that the parties entered into a meretricious relation at the inception of the relationship, but to the contrary there is the foregoing positive testimony relating to the inception of the relation strictly to the effect that the parties entered into a marriage relationship as man and wife. The rule adopted in this jurisdiction is that the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy, every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality, casting the burden of proof upon the party objecting and requiring him in every particular, to make plain, against the constant pressure of this presumption the truth of law and fact that the marriage is illegal and void. In *Smith v. Smith,* 32 Ida. 478, 185 Pac. 67, wherein this presumption is indulged the rule is stated as follows:

"The general rule, quoted by the supreme court of California from Bishop on Marriage, Divorce and Separation, is:

' "Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality; not only casting the burden of proof on the party objecting (1 Bishop on Mar. Div. & Sep. secs. 946–948), but requiring him throughout, in every particular, to make plain, against the constant pressure of this presumption, the truth of law and fact that it is illegal and void." Id. Sec. 956.' (*McKibbin v. McKibbin,* 139 Cal. 448, 73 Pac. 143.)

"Or as otherwise stated by the New York court of appeals in the following language, which has been frequently quoted with approval by more recent authorities:

" 'The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immoral-

ity; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence.' (*Hynes et al. v. McDermott et al.*, 91 N. Y. Supp. 451, at 459, 43 Am. Rep. 677; *Sloan v. West*, 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960; *Bowman v. Little*, 101 Md. 273, 61 Atl. 223, 657, 1084; *Teter v. Teter*, 101 Ind. 129, 51 Am. Rep. 742; *Rooney v. Rooney*, 54 N. J. Eq. 231, 34 Atl. 682.)'' (*Huff v. Huff*, supra; *Dawson v. United States*, 10 Fed. (2d) 106.)

Proof of marriage by the testimony of one of the parties has been specifically recognized by this court in *Labonte v. Davidson*, 31 Ida. 644, 175 Pac. 588, wherein it is said:

''The presumption of law is in favor of the validity of a marriage (*Huff v. Huff*, 20 Ida. 450, 118 Pac. 1080), and the direct testimony of respondents was sufficient to establish, *prima facie*, their relation of husband and wife. Marriage may be proven by the testimony of one of the parties. (*Watson v. Lawrence*, 134 La. 194, 63 So. 873, Ann. Cas. 1916A, 651, and note, L. R. A. 1915E, 121.)''

In addition to the testimony of appellant heretofore referred to there is considerable evidence of a mutual assumption of marital rights, duties and obligations, that the parties held themselves out to the world as husband and wife and cohabited together as such. The facts disclosed by the record did not permit of the presumption that the relationship of appellant and John Mauldin was illicit in its inception, but rather the evidence was sufficient to establish their relationship of husband and wife, raising the strong presumption of its legality, and casting the burden of proof upon respondents to repel such presumption by the most cogent and satisfactory evidence.

The evidence with respect to the fact that appellant had twice before been married, given fullest consideration can have no bearing upon the issue of whether or not appellant was the wife of John Mauldin. The presumption existing in this jurisdiction is that where a subsequent marriage has been shown to exist, there arises a presumption, equally strong, that any impediment theretofore existing has been removed prior thereto, and this presumption prevails where either

death or divorce may have removed the former impediment, the presumption being so strong that evidence to overcome it must be so cogent and conclusive as to fully preclude any other result. (*Estate of Tormey, supra; Smith v. Smith, supra.*) The presumption that impediments have been removed casts the burden upon the party attacking the validity of a marriage to show by clear, cogent and satisfactory evidence, not only the fact of the former marriage but the further fact that no divorce has been obtained from the former spouse (*Smith v. Smith, supra; Estate of Tormey, supra*) and that death has not removed the former spouse. (*Estate of Tormey, supra; Huff v. Huff, supra.*) In the face of this well established rule the proof on the part of respondents is wholly insufficient to show any impediment to a marriage between appellant and John Mauldin or to overcome the presumption that all or any impediments have been removed. The record is silent as to whether or not either of the former spouses of appellant were dead or alive and the record is likewise silent as to the question of divorce.

The fact that appellant and John Mauldin advised others that they had been married in Pasco, Washington, and the further fact that they intended to have a ceremonial marriage performed would appear to further strengthen the presumption that the parties entered into a marriage in the first instance, rather than as an indication that their relationship was illicit. The evidence offered by respondents to rebut the presumption of marriage appears to be negative in character, consisting of evidence of acts of appellant and John Mauldin purportedly indicating that the parties did not hold themselves out to the public as husband and wife. With respect to appellant there is evidence that she worked at Chet's Cafe for three weeks under the name of Laverne Lee. However there is no showing that she stated that she was single or unmarried at this or any other time, and appellant stated she used the name of Laverne Lee for the reason that she understood married women could not work at this cafe. There is further evidence, consisting of records prepared and kept by employees of the Sunshine Mining Company and signed by John Mauldin, some of which were prepared and signed prior

to the marriage of appellant and John Mauldin. There is no showing that John Mauldin or appellant ever denied the existence of the marriage relationship, other than the inferences which might be drawn from the acts referred to. There is further evidence of the Deputy Collector of Internal Revenue that John Mauldin stated that he was not married in answer to a question by the collector for the purpose of filling out a delinquent income tax return for the year 1936—before the marriage of John Mauldin and appellant. Without passing upon the admissibility of such evidence, in so far as the record discloses all of these purported statements of John Mauldin contained in the records were made entirely without the presence or knowledge of appellant. The evidence is insufficient to show that there was not a full compliance with the provisions of sections 31–201 and 31–203, I. C. A., *supra,* but on the contrary establishes a compliance therewith and that the parties entered into a marital relationship by mutual assumption of marital rights, duties and obligations. The evidence offered by respondents to rebut the presumption of marriage, or all the evidence in the record which may be said to tend to rebut the presumption, is not so cogent and satisfactory as would rebut this strong presumption. It does not make plain against the constant pressure of the presumption of marriage the truth of law and fact that it is void.

There was no competent and substantial evidence to support the findings and award of the Industrial Accident Board, therefore the findings and award should be set aside and an award entered in favor of appellant. (*In re Larson,* 48 Ida. 136, 279 Pac. 1087; *In re Hillhouse,* 46 Ida. 730, 271 Pac. 459; *Burchett v. Anaconda Copper Min. Co.,* 48 Ida. 524, 283 Pac. 515; *Ybaibarriaga v. Farmer,* 39 Ida. 361, 228 Pac. 227, 228.)

The order of the Industrial Accident Board is reversed and the cause remanded, with instructions to make and enter an award in favor of appellant. Costs to appellant.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.

Petition for rehearing denied.