Argued September 7, reversed September 28, 1960

# BOYKIN *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

### 355 P. 2d 724

*Don G. Swink,* Portland, argued the cause for appellant. On the briefs were Bailey, Lezak, Swink & Gates.

*George S. Woodworth,* Assistant Attorney General, Portland, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

GOODWIN, J.

The plaintiff, who uses the name Kathleen Boykin, appeals from a judgment entered in favor of the defendant State Industrial Accident Commission upon findings and conclusions made by the trial judge sitting without a jury.

The plaintiff had appealed to the circuit court from an administrative order of the Commission denying her widow's benefits under the Workmen's Compensation Act.

The sole question is whether the plaintiff was the widow of one Jack E. Boykin, whose fatal injuries were sustained while he was engaged in employment covered by the act. There were no children born as issue of the relationship.

It is agreed that Kathleen and Jack had lived together continuously for more than ten years without having formalized their relationship by participation

in a marriage ceremony. In all respects except for the failure to solemnize the marriage, their relationship resembled a normal marriage.

The plaintiff contends that the trial court erred in failing to find that there was a common-law marriage under the law of Idaho. It is the plaintiff's theory that her uncontradicted testimony was sufficient as a matter of law to require a finding in her favor. She asserts that the facts found by the trial judge to the contrary cannot be sustained on the record.

If there is a conflict in the evidence, or a failure of proof, the findings of fact by the trial judge are entitled to the same weight as would be the verdict of a jury. The defendant Commission put on no testimony. We are obliged, therefore, to study the plaintiff's testimony in detail. If her testimony falls short of the necessary proof to make out a *prima facie* case of common-law marriage under Idaho law, then the findings of the trial judge are conclusive.

The record showed the following chronology:

In 1941 Kathleen first met Jack in Arizona. Both were married at that time to other parties. There is no evidence of anything but friendship between the two.

In 1944 Kathleen obtained a Nevada divorce from a man named McClure.

In 1947 Jack was divorced by his then wife in the state of Arizona, where he was presumably domiciled. Neither divorce is questioned by the defendant.

In 1947, after Jack's divorce, Kathleen and Jack commenced living together in the state of Arizona, where common-law marriage is not recognized. The arrangement at that time is conceded to have been illicit.

Between 1947 and the latter part of 1949, Kathleen and Jack lived together in the states of Arkansas, Arizona, Nevada, and Utah. None of these four states recognized common-law marriage. In 1951 Kathleen and Jack spent from three to five months in Idaho. Idaho recognizes common-law marriage.

In 1951 Kathleen and Jack filed separate income tax returns for 1950 from the same address in Wallace, Idaho. Both used the name Boykin. Jack listed Kathleen as a spouse. Kathleen left the space blank on her return.

In 1952 Kathleen and Jack filed a joint federal income tax return for 1951 from an address in Portland, Oregon. This tax return revealed that the parties had earned income in the states of Idaho, Montana, Oregon and Utah, during the year 1951. After 1951, Kathleen and Jack lived in Oregon exclusively. All of their known conduct in Oregon is consistent with a valid marriage of ten years' standing.

The plaintiff founds her claim to widowhood on this testimony from the trial:

"* * * * *

"Q Now, Mrs. Boykin, during the period that you lived in Idaho was all of it in Wallace or in the Wallace Area?

"A Yes it was.

"* * * * *

"Q Now, could you tell us in your own words whether anything occurred while you were living in Idaho that would in any way affect the relationship that you had with Jack?

"A Well, there was one evening Jack and I and a friend of ours was setting in the cafe there.

"Q What was the friend's name?

"A Frank Hess. And we were talking about marriages and different things, and he said that

Idaho recognized common law marriages, and Jack turned around and looked at me and he says, 'Well,' he said, 'We are married now.' He says 'We have lived here and' he said, 'I guess we are really married.'

"Q Was there any other conversation between you and Jack at any time subsequent to that or prior to that in Idaho that would have any bearing on this?

"A Well, more intimate moments, yes.

"Q Well, in order for the Court to fully understand the situation between you we are going to have to explain those to the Court, Kay.

"A Well, later that night, then, why, as we were getting ready for bed he says, 'Well,' he says, 'it's all legal now.' And I said, 'Well, not only by law' I said, 'it's always been in the eyes of God, too.' "

There was evidence that the parties lived together in sickness and in health. At one time Kathleen was in and out of hospitals during a period of nine months, suffering from a serious illness. The testimony was conclusive that the parties held themselves out at all times as man and wife. There was testimony to the effect that they talked about getting married but did not get around to it. There was also testimony by mutual friends who said that they thought the couple was married.

Kathleen and Jack were both free of legal impediment to marriage when they began their informal arrangement in Arizona in 1947. They could have married at any time in any one of the several states in which they lived. They were, of course, free to marry when they entered Idaho.

■ A relationship recognized as a marriage in another state where it was consummated will be recognized in Oregon even though such a relationship would

not be a marriage if the same facts had been relied upon to create a marriage in Oregon. *Kelley et al v. Kelley*, 210 Or 226, 230, 310 P2d 328; *Sturgis v. Sturgis*, 51 Or 10, 16, 93 P 696, 131 Am St Rep 724, 15 LRA (NS) 1034. The same rule works in reverse. If the marriage was void where consummated, it remains invalid elsewhere unless affirmative action is taken to cure the defect. *Huard v. McTeigh*, 113 Or 279, 287, 232 P 658, 39 ALR 528.

The Commission contends in the case at bar that there was no marriage at all. The Commission says that the parties were simply living together, wherever their travels took them, and the mere fact that they stopped for a few months in a state which recognizes common-law marriages is insufficient to convert an illicit relationship into a lawful one. The Commission says that the presumption that a thing once proved to exist continues as long as is usual with things of that nature, ORS 41.360 (32), applies to illicit relationships. The Commission also contends that the testimony of the plaintiff that she and the deceased were never formally married rebuts the presumption that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage. ORS 41.360 (30).

The real issue here is whether the plaintiff's testimony concerning events in Idaho constituted sufficient evidence of affirmative conduct to convert a previously illicit affair into a common-law marriage under the laws of that state. She conceded that the affair was at all times illicit until the parties lived as man and wife in Idaho, but she contends that their conduct in Idaho met the requirements of the law of that state.

Rather than merely transporting an illicit affair

across a state line, as was done in the case of *French v. State Ind. Acc. Com.,* 156 Or 443, 68 P2d 466, the plaintiff contends that she and the deceased satisfied the requirements of mutual assent and mutual assumption of the rights and duties of coverture contained in the statutory law of Idaho. Idaho Code, § 32-201.

Since this court decided the *French case* in 1937, the Idaho court has had occasion to consider the type of conduct which it would recognize as satisfying the requirements of a common-law marriage in that state. The recent decisions from Idaho tend to support the plaintiff's theory in the case at bar.

*Nicholas v. Idaho Power Co.,* 63 Idaho 675, 125 P2d 321, was an action by the widow to collect death benefits under the workmen's compensation law. There was a ceremonial marriage in Utah, but it was void because it took place within six months of the divorce of the decedent from his first wife. The court found, however, that a common-law marriage came into being after the six months:

> "The statute, sec. 31-201, which defines marriage as a civil contract, says 'Consent alone will not constitute marriage; it must be followed by a *solemnization, or by a mutual assumption of marital rights, duties or obligations.'* (Italics supplied). In this case, both conditions of the statute have been met; and even though there was a time impediment existing when the ceremonial marriage took place, after that impediment ceased, the 'mutual assumption of marital rights, duties or obligations' *continued* in good faith." 63 Idaho at 680.

In *Mauldin v. Sunshine Mining Co.,* 61 Idaho 9, 97 P2d 608, the purported widow sued to recover death benefits under the workmen's compensation law.

There was no ceremonial marriage. The court found: "the parties entered into a marital relationship by mutual assumption of marital rights, duties and obligations." 61 Idaho at 20. There was "considerable evidence * * * that the parties held themselves out to the world as husband and wife and cohabited together as such." 61 Idaho at 18. Defendant raised the defense that the alleged marriage was meretricious in its inception, and relied upon the presumption that it continued illicitly because the plaintiff was already married at the time of the purported common-law marriage. The court struck this down with a counter-presumption that the previous marriage was terminated by divorce or death. The statute that is now Idaho Code, § 32-201, was held to be satisfied.

*Thomey v. Thomey*, 67 Idaho 393, 181 P2d 777, was an action by the wife for divorce and division of property. In 1933 the parties commenced living together. Plaintiff was married at that time. In 1937 plaintiff was divorced.

"* * * No ceremonial marriage took place thereafter between respondent and appellant, but they continued to live together with their children as previously, in the same house, occupying the same bed, and with the respondent continuing to take care of appellant and the other members of the family and to do the washing, mending, ironing, cooking and housekeeping duties for all until she left appellant in July, 1946." 67 Idaho at 395.

The Idaho court held that a "common law" marriage resulted.

*In re Foster*, 77 Idaho 26, 287 P2d 282, was an action by the widow for death benefits under the workmen's compensation law. The court found that plaintiff and decedent traveled from Idaho to Wash-

ington, where they agreed to be married. Thereafter in Washington and Idaho they lived as husband and wife, treated each other as such, and were so recognized by the community. From this the court found a marriage. As to Washington law, the court held alternatively (1) that in the absence of proof it would be presumed to be the same as Idaho's and (2) in any case the consent continued after the parties commenced living in Idaho and made a marriage there. "But, assuming the marriage was consented to and consummated in the state of Washington, consent is a continuing thing, and it follows that the parties also consented to and consummated the marriage in Idaho upon their return * * *." 77 Idaho at 32.

■ The true test for this court, then, is whether, if the factual history of Kathleen and Jack were given to the Idaho court, that tribunal would say that the parties were married. In order to apply the test we must base our concept of Idaho law upon the adjudicated cases in that forum. As seen above, the Idaho court would undoubtedly rule that Kathleen and Jack were married.

■ It follows under the rule previously announced that the marriage, being valid in Idaho, is entitled to recognition in Oregon. The trial court, on the uncontradicted testimony of the plaintiff, should have found in her favor. The Idaho cases leave little doubt that an Idaho court would have done so. The facts in the case at bar are stronger in favor of marriage than those of the Idaho cases which we have examined. We must follow Idaho law on this question.

The difference between the instant case and the *French case,* supra, is that in the *French case* the plaintiff's testimony was contradictory and uncertain.

The jury had the right to disbelieve it and we affirmed the judgment. In the instant case the facts were not in dispute, and the question was primarily one of law.

It was stipulated between the parties that the customary attorney's fee would be paid by the defendant in the event of judgment for the plaintiff.

Reversed.