804 P.2d 299

**In the Matter of the Appeal of EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY (GOOD SAMARITAN VILLAGE) From the Board of Equalization of Latah County for Tax Year 1987.**

**EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY (GOOD SAMARITAN VILLAGE), Appellant–Appellant on Appeal,**

v.

**BOARD OF EQUALIZATION OF LATAH COUNTY, Respondent–Respondent on Appeal.**

No. 18047.

Supreme Court of Idaho, Moscow, April 1990 Term.

Dec. 6, 1990.

Rehearing Denied Feb. 6, 1991.

William E. Anderson, Moscow, and Hackler, Lunderholm, Hintele, Corder, Martin & Hackler, Olathe, Kan., for appellant. Eugene T. Hackler, argued.

BOYLE, Justice.

In this property tax exemption case we are called upon to determine whether the independent living quarters and common areas of a retirement center operated by a religious organization qualifies for tax exempt status. Appellant Evangelical Lutheran Good Samaritan Society (hereinafter "Society") and Good Samaritan Village (hereinafter "Village") claim that the property which is devoted to an integrated multi-level care center for the aged is exempt pursuant to the Idaho charitable exemption and hospital or refuge homes exemption statutes.

## I.

### COURSE OF PROCEEDINGS

The Village had been granted property tax exempt status from 1972 through 1986. On July 14, 1987, the Latah County Board of Equalization granted a tax exemption for the skilled nursing portion of Good Samaritan Village, along with a proportionate share of the building and grounds, but denied tax exempt status to the individual living portions of the facility. The Society appealed the denial of tax exemption to the Idaho Board of Tax Appeals. The Board of Tax Appeals denied the exemption for the independent living units and upheld the order of the county board of equalization. The Society then filed an appeal with the district court, which heard the case in a trial de novo. The district court affirmed the decisions of the county board of equali-

zation and the Board of Tax Appeals to the extent that the independent living units and thirty-three percent of the common areas are not exempt from real property tax.

## II.

### FACTS

The Evangelical Lutheran Good Samaritan Society was organized as a religious nonprofit corporation and is a federal tax exempt organization. The Society built the Good Samaritan Village (Village) in Moscow on donated land and has received over one million dollars in donations, including the value of the donated land, from various individuals and organizations. The Village consists of a sixty-bed skilled nursing facility, sixty-seven independent living apartments, twenty-six independent living duplexes, social and religious activity areas, dining rooms and administrative offices.

The residents of the Village's independent living units are provided access to a number of services including administration of medication, emergency call telephones staffed twenty-four hours per day, medical support, utilization of the central dining room or delivery of meals, daily devotional services, weekly Bible study and church services, a beauty and barber shop and van services to outside activities. Some of these services require additional payments from the residents.

The Society asserts on appeal that the Village provides a general public benefit by bringing older people to Moscow, providing senior citizen facilities and reducing the cost of care of the elderly in that community. The Society asserts that multi-care facilities such as the Village shortens hospital stays for the elderly thus reducing the burden to the government and helps avoid transfer trauma to its residents. The Society also operates a hospice at the Village which it claims benefits the entire Moscow community. In addition, the Society points out that its corporate charter expressly provides that no person will be denied admission for treatment or care at the Village because of poverty, creed, station or color and the directors of the society receive no compensation for their work as directors.

The residents of the independent living units in the Village pay an initial founder's fee of at least $27,000.00 which is used to cover the cost of construction, maintenance and operation of the facility. Eighty percent of the fee, without interest, is refunded to the resident's estate upon his or her death or when the resident moves from the Village. In addition to the founder's fee, residents of the Village are required to pay a monthly maintenance fee of at least $240.00 for the one-bedroom units. As an alternative to the founder's fee, a resident may pay a higher monthly maintenance fee. The district court found that the monthly maintenance fees charged to the residents were comparable to those charged for rents and services provided by profit oriented commercially operated retirement homes.

Although the Society claims that it is a charitable organization, the district court found that no person who was unable to pay the founder's fee has ever been admitted as a resident at the Village. Furthermore, the district court noted that when one resident was unable to pay monthly rent she was referred to the Latah County Welfare Director and that Latah County has been providing monthly contributions toward her living expenses. The Village has an "Anchor Fund" established to assist residents with groceries, meals or other assistance but not for rental or housing assistance. The district court also found that the donations and gifts made to the Village were "infinitesimal" when compared to the costs of construction and operation of the Village.

The appellant presents a persuasive factual scenario concerning the charitable nature of the Good Samaritan Village. However, the trial court did not see the facts in the same light. It is well established in this jurisdiction that the trial court judge is the arbiter of conflicting evidence. *See Rankin v. Rankin*, 107 Idaho 621, 691 P.2d 1236 (1984). On appeal we have independently reviewed the trial court's record, and while we may disagree with certain of

the trial court's findings, we note that the findings are supported by substantial and competent evidence. The credibility and weight to be given evidence is in the province of the trier of fact. On appeal we will not disturb the trial court's factual findings where they are supported by substantial and competent, though conflicting evidence. *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985); *Pointner v. Johnson*, 107 Idaho 1014, 695 P.2d 399 (1985).

## III.

## STATUTORY CONSTRUCTION OF TAX EXEMPT STATUTES

Statutes granting exemptions, which exist as a matter of legislative grace, are strictly construed against the taxpayer and in favor of the state. *Sunset Memorial Gardens v. Idaho State Tax Comm'n*, 80 Idaho 206, 327 P.2d 766 (1958). The burden is on the claimant taxpayer to clearly establish a right of exemption and the terms of the exemption must be so specific and certain as to leave no room for doubt. *Bistline v. Bassett*, 47 Idaho 66, 272 P. 696 (1928). An exemption cannot be sustained unless it is within the spirit as well as the letter of the law. *Id.* The courts are bound by the statute and cannot create or extend by judicial construction an exemption not specifically authorized. *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984); *Sunset Memorial Gardens v. Idaho State Tax Comm'n*, 80 Idaho 206, 327 P.2d 766 (1958).

The Society must satisfy its burden and clearly establish a right to the exemption provided in the statutes before an exemption pursuant to those statutes will be granted.

## IV.

## EXEMPTION FOR HOSPITALS.

The appellant Society claims that the multi-level care center, including the

independent living units, should be considered a hospital and as such qualifies for tax exempt status under the provisions of I.C. § 63–105K.

Idaho Code § 63–105K [1] exempts from taxation those hospitals and refuge homes owned, operated and controlled by any religious or benevolent corporation or society from which no gain or profit is derived by reason of their operation.

The district court held that the nursing home did qualify for an exemption based upon the provisions of I.C. § 63–105K as a hospital. The Society argues that because the independent living units are a part of "continuum of care" provided elderly persons in both the nursing home and the independent living units that this portion of the facility qualifies under the hospital exemption for tax exempt status.

In *Bistline v. Bassett*, 47 Idaho 66, 272 P. 696 (1928), we defined a hospital to be an "institution for the reception and care of the sick, wounded, infirm or *aged* persons; generally incorporated, and then of the class of corporations called 'eleemosynary' or 'charitable.'" *Id.* at 47 Idaho 71, 272 P. at 698 (*quoting Bouvier's Law Dictionary*, p. 1459; *Black's Law Dictionary*, p. 580) (emphasis added). Since only elderly or aged persons live in the independent living units and all residents are eighty years of age or older and have some medical problems, the Society argues that it satisfies the test to qualify as a tax exempt hospital. However, considering that tax exemptions are construed strictly against the taxpayer, the definition of hospital requires it be more than an institution which provides housing and minimal medical care for those who are ambulatory and otherwise able to care for themselves. We hold that this particular property used primarily to provide housing for aged or elderly persons in

---

1. Idaho Code § 63–105K states:
    **Property exempt from taxation—Certain hospitals and refuge homes.**—The following property is exempt from taxation: Hospitals and refuge homes, their furniture and equipment, owned, operated and controlled, and

    medical equipment leased, by any religious or benevolent corporation or society with the necessary grounds used therewith, and from which no gain or profit is derived by reason of their operation.

a retirement community or village does not qualify as a tax exempt hospital. The general usage of the term hospital implies that the primary purpose of a hospital as contemplated by our statute is to provide health and medical care. The independent living units of the Village simply do not satisfy that requirement and do not qualify for tax exempt status as a hospital.

Furthermore, the terms of I.C. § 63–105K and the definition of a hospital require that the tax exempt property be used for charitable or benevolent purposes, and I.C. § 63–105C requires that the institution claiming a tax exemption comply with a standard of charity. Since it is an elementary axiom of statutory construction that tax statutes must be construed in pari materia, *North Idaho Jur. of Episcopal Churches, Inc. v. Kootenai Co.*, 94 Idaho 644, 496 P.2d 105 (1972), we will address the charitable requirement in conjunction with our discussion of the charitable exemption under I.C. § 63–105C.

## V.

## EXEMPTION FOR CHARITABLE INSTITUTIONS

■ Idaho Code § 63–105C grants a tax exemption for the following:

*[P]roperty belonging to any fraternal, benevolent, or charitable corporation or society* ... used exclusively for the purposes for which such corporation or society is organized; *provided*, that if any building or property belonging to any such corporation or society is leased by such owner or *if such corporation or society uses such property for business purposes from which a revenue is derived which, in the case of a charitable organization, is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property,* ... [provided, however, that the lease or use of any property by any such corporation or society for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms within the purposes for which such corporation

or society is organized, shall not be deemed a business or commercial purpose, even though fees or charges be imposed and revenue derived therefrom].

(Emphasis added.)

Although the general rules of construction require us to construe a tax exempt statute strictly and against the taxpayer, the legislative intent of the statutes must not be overlooked. *Richardson v. State Tax Comm'n*, 100 Idaho 705, 604 P.2d 719 (1979). In *North Idaho Jur. of Episcopal Church, Inc. v. Kootenai County*, 94 Idaho 644, 496 P.2d 105 (1972), this Court observed that the rationale and intent of these tax exemptions are based upon legal principles and policy reasons which urge the legislature to encourage and promote sobriety, morality and virtue in the people of this state.

We must, as in all other judicial determinations, place in juxtaposition the two extremes of judicial interpretation. On the one hand is the policy of strict construction which frowns upon tax exemptions. On the other hand, innocent collateral activities essential to the furtherance of the true purposes of the corporation should not blind the court to the genuineness of those purposes nor to the sincerity of their actual accomplishment.

The present depression calls, on the one hand, for a more strict limitation of tax exemptions in the contemplation of the present excessive burdens of the taxpayers. On the other hand, we must strive to maintain intact those religious, charitable, educational and fraternal institutions which have been essential and integral parts not only of the foundation but in the maintenance of the form of government and type of society in which we live.

*North Idaho*, 94 Idaho at 648, 496 P.2d at 109 (*quoting Buffalo Turn Verein v. Reuling*, 155 Misc. 797, 281 N.Y.S. 545, 546 (1935)).

In *Sunset Memorial Gardens v. Idaho State Tax Comm'n*, 80 Idaho 206, 327 P.2d 766 (1958), this Court observed:

Exemption statutes may be roughly classified as belonging to one of three groups, viz.: (1) Those making ownership of the property by a certain institution or class of people the test; (2) Those making the particular use of the property rather than the ownership the test; and (3) Those making both ownership and use the test. Especially is this classification of importance in connection with exemption of charitable, religious and educational institutions. If ownership is the test, then the use is often held immaterial. If use is the test, then the ownership is generally immaterial.

*Id.* at 80 Idaho 217, 327 P.2d at 773 (quoting 2 Cooley *Taxation* (4th ed.) § 690, p. 1452.)

In *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984), this Court required both ownership and charitable use of the property in order to obtain an exemption pursuant to I.C. § 63–105C. In order to be granted an exemption the organization must first prove that it is a charitable organization, and, secondly, that the claimed exempt property is used *exclusively for charitable purposes.* In *Sunny Ridge* this Court set forth a non-exhaustive list of factors to consider in determining whether an institution is charitable and whether the property is used exclusively for charitable purposes. Those factors include:

(1) the stated purposes of its [the corporation or organization] undertaking, (2) whether its functions are charitable ..., (3) whether it is supported by donations, (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need.

*Id.* at 106 Idaho 100, 675 P.2d at 815.

In *Coeur d'Alene Pub. Golf Club v. Kootenai Bd.*, 106 Idaho 104, 675 P.2d 819 (1984), the Court stated:

These factors do not constitute a formal checklist for deciding if a corporation is "charitable"; rather they serve only as guidelines for the court's application of the definition of "charitable" as to a particular corporation.

*Id.* at 106 Idaho 105, 675 P.2d at 820. Furthermore, in *Sunny Ridge* the Court held that "[d]etermination of an institution's charitable status is necessarily an individual matter, to be decided on a case-by-case basis." 106 Idaho at 100, 675 P.2d at 815. In *Sunny Ridge* this Court determined that charitable meant more than providing financial relief for the poor, and that charitable encompassed "a wide variety of services—social, recreational, cultural, psychological, religious and others ..." including the needs of the elderly which are more complex than simply providing financial aid.

To be classed as charitable, an organization need not provide monetary aid to the needy; it may provide any of a *number of services of public benefit.* The word "charitable," in a legal sense, includes every gift for general public use, whether it be for educational, religious, physical or social benefit.

*Id.* at 106 Idaho 100, 675 P.2d at 815 (emphasis added). Thus, providing some services for a fee to cover the cost of the services may provide a public benefit as would be the case with educational, literary, scientific or social institutions and the charging of a fee in those circumstances would not necessarily jeopardize the tax exempt status of the organization.

In order to qualify for a tax exemption, I.C. § 63–105C first requires that the organization be established to provide some public benefit or to fill some public need. In *Powers v. Canyon County*, 108 Idaho 967, 703 P.2d 1342 (1985), we held that the exemption for "fraternal, benevolent, or charitable corporation" was a "broad standard benefit."

It is with these foregoing guiding principles in mind that we analyze the record before us.

Providing homes and services for the elderly at a cost which can be met by them and providing affordable housing and medical care which meets the special needs of

the elderly in a non-profit setting is generally considered to be a charitable purpose. However, I.C. § 63–105C not only requires that the organization be established as a charitable institution, but also that the property claimed as exempt *must be used exclusively* for charitable purposes. Idaho Code § 63–105C allows a charitable institution to collect fees and rents from exempt property, however, the exclusive use of the property must be for charitable purposes in order to maintain its tax exempt status.

It is undisputed that the Society provides housing for the elderly, however, there is nothing charitable in providing housing at the same or comparable rates as housing available from the private sector or commercial retirement centers. In order for the Society to be allowed the tax exemption, the exclusive use of the property must provide some gift or service of public benefit. If the independent living units do not meet the needs of the elderly residents, or if the costs of living in the independent living units is not affordable for those elderly who need the services, then there is no public gift or benefit as contemplated by the statutes. If the only elderly persons residing in the facility are those who can afford to pay the founder's fee or the monthly maintenance fees that are comparable to profit oriented commercial retirement housing in the same community the organization is not entitled to tax exempt status.

In *Sunny Ridge* we addressed this issue and said the following:

> One of the factors most frequently looked at by courts in determining if a retirement center is a charitable corporation is the amount of fees required of the residents. A number of jurisdictions have held that the traditional requirement of cost-free assistance no longer applies. An institution may still qualify for a tax exemption even if fees are taken from residents to help cover operating expenses. [citations omitted.] However, in the majority of cases so holding, the rule is premised on the fact that the charges are nominal, or at least not commensurate with the benefits provided. [citations omitted]. . . . It is difficult to view as charitable such an arrangement, and while we do not necessarily follow the lead of many jurisdictions which have held that fees charged which are "remunerative" in character are determinative of noncharitable status, we are persuaded that such a factor is of great importance and should be weighted accordingly. (Citations omitted.)

*Id.* at 106 Idaho 101–02, 675 P.2d at 816.

In the instant case the trial court found that the cost of housing at the Village was comparable with other commercial retirement centers. Furthermore, the trial court found that the Society had never provided housing at a reduced cost to any resident and the revenue collected by the Society from its residents has substantially exceeded costs and expenses for the past several years.[2]

The Society argues that it's "lifeline" services are provided at a substantially reduced cost. However, the record also demonstrates that the "lifeline" program is operated from the tax exempt skilled nursing center rather than being a part of the independent living units.

Although the Society contends that it established the "Anchor Fund" to aid its elderly residents, the record reveals that this fund is not used to subsidize the rent or fees that the residents are required to pay for living quarters. The Anchor Fund

---

2. The fact that revenue has exceeded costs and expenses does not make this corporation a for profit corporation. However, it is a factor to be considered by the trial court as to whether the institution is operating similar to a for profit commercial corporation. We do not require a non-profit corporation to operate at a deficit, however, the accrual of *substantial* positive net revenue year after year, excluding donations, is suspect as noted by the trial court. The record reveals that a large portion of this positive revenue is used for investment purposes. While saving for a rainy day is admirable, we note that it is contrary to the charitable purpose of the Society. The fact that the Village is producing a substantial net positive revenue and that this excess revenue is used for investment purposes by the Society supports the trial court's finding that the Village property is not being used exclusively for charitable purposes.

is not related to or dependent upon the operation of the independent living units. Rather, the Anchor Fund is used to provide financial assistance to residents for food, medical and other temporary, special needs. The existence of this fund does not affect the use of the independent living units and cannot be relied upon to support the Society's claim for tax exempt status on the living quarters portion of the building.

The Society claims that the independent living complex provides a charitable function in the community because it brought further growth and development to the area. However, this is an incidental benefit and the charitable nature of the Society did not foster the growth. It is well established that an incidental benefit bestowed upon a community does not constitute a public benefit for tax exemption purposes. *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho at 102–03, 675 P.2d at 817–18. As we held in *Sunny Ridge*, the "basis of tax exemptions is the accomplishment of public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally." *Id.* The Society has obviously been the recipient of kind benefactors and received many donations. While this Court disagrees with the trial court's conclusion that a million dollars in donations is an "infinitesimal" amount, the fact that the Society received donations does not necessarily make it a charitable organization entitled to tax exempt status under the tax laws of this state. Except for the donation of the land where the multi-level complex was built, the record does not clearly reveal how the donated funds have been used to provide a public benefit. The trial court stated in its findings:

> During the course of this trial the testimony of the Society's witnesses as to the cost of operating the entire GSV facility and the revenue derived from such operations was convoluted, confusing and inconclusive. There just is no competent evidence showing the purposes for which donations received were expended; there is no competent evidence to show that any of aid donations were used by the

Society to support the operation of maintenance of the independent living units.

While this Court has no reason to believe that the donations received over the years have not been expended for worthy purposes there is, plain and simply, just no evidence to establish that the independent living units—the property for which the tax exemption is sought—were supported by donations.

The record reveals good intentions on the part of the Society, and its charter provides that no person will be denied residency because of his or her financial situation, nor be required to leave because of an inability to pay. However, the trial court found that when one resident was unable to pay rent, the Society referred her to the Latah County welfare agency. In essence, the Society has good and charitable intentions regarding the independent living units, but the property has not been used exclusively or primarily for a charitable purpose as required by the Idaho statutes in order to be granted tax exempt status. We are not requiring by this holding that charitable organizations provide free or significantly subsidized housing to all of its residents in order to maintain tax exempt status, however, we do require more than what the record discloses in the instant case was provided to the residents by way of charitable assistance.

The facts of this case as found by the trial court are remarkably similar to those presented in *Sunny Ridge* where we denied tax exempt status to a retirement home for the elderly. In *Sunny Ridge* we said:

> If Sunny Ridge attempted to provide its services based on need to a greater extent, there might be more of a direct public benefit, even though the center can accommodate only a limited number of persons. As the record shows, however, there is no means provided by which individuals having particular needs for the types of services Sunny Ridge can provide are singled out for admission, or for assistance. Although the record shows that Sunny Ridge provides its care at substantial savings over what

would be charged at a nursing home, for example, there is nothing in the record to indicate that this benefit of reduced costs is directed toward those who particularly need it. The savings may well benefit primarily persons who could afford to pay higher costs. In any case, the type of individual who needs nursing home care could not pass the entrance qualifications at Sunny Ridge.

*Id.* at 106 Idaho 103, 675 P.2d at 818. The same principles apply in the instant case and the facts of *Sunny Ridge* are not so distinguishable from those presented here so as to compel a different result. The findings of fact of the district court are supported by substantial and competent evidence and will not be disturbed on appeal.

The order of the district court is affirmed. Costs to respondent. No fees awarded on appeal.

BAKES, C.J., and JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, dissenting.

Idaho Code § 63–105K does exempt from taxation, as the majority so states at 119 Idaho at 129, 804 P.2d at 302 (1990), those hospitals and refuge homes operated and controlled by any religious or benevolent corporation or society from which no profit is gained by reason of their operation.

Justice Boyle's scholarly opinion demonstrates an exhaustive research of applicable law—all of which notably has been generated in Idaho. That in itself also reflects favorably on the prior case precedent which is cited in the opinion, and in turn shows respect for those prior opinions and the members of earlier courts who were participants.

The opinion for the court which Justice Boyle has presented seemingly relies most heavily on an opinion authored by Justice Huntley, namely *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984). There, although my vote was with the four member majority, and we were reversing Judge Doolittle's decision while here we are affirming Judge Bengtson's decision, I deemed it in order to state views personal to me, and which now six years later, seem to be applicable. At that time I wrote:

Having concurred, I write only to state what I believe I am agreeing to. First of all, it is noted that we are ruling as a matter of law. The discussion which ensues in the Court's opinion then discusses in some detail the facts of this case. From this I conclude that our holding today is that although a retirement center can qualify for tax exemption, in this case, under these facts, an exemption is not quite justified.

The case is a close one, and in my view could have gone either way, especially where we are required to say, but do not, that the trial judge was clearly in error.

The concept here is not only intended to be charitable, but cannot be other than in the best interests of all the people of Idaho. Each passing decade has increased the need for reasonable and adequate housing for those who every ten years age ten or more years, and, who except for this type of planning, will exhaust their resources to the point that the state often becomes required to help out. I hope that qualification for nursing home admission is not seen as the touchstone of our decision, and that this type of commendable private endeavor is not to any extent discouraged.

106 Idaho at 103–04, 675 P.2d at 818–19 (footnote omitted).

Six years passage of time, during which Idaho citizens numbering in the thousands have aged six years or more, reaffirms my firm persuasion that this type of commendable private endeavor should not to any extent be discouraged. To that may be added that it should be encouraged.

As Justice Boyle points out, "The appellant presents a persuasive factual scenario concerning the charitable nature of the Good Samaritan Village." 119 Idaho at 128, 804 P.2d at 301 (1990). That is a good assessment, and this member of the court *is* persuaded.

There is little to be accomplished by saying more—but time does allow me to express a concern to the rationale which the

court's opinion applies to hospitals and tax exemptions:

> The district court held that the nursing home did qualify for an exemption based upon the provisions of I.C. § 63–105K as a hospital. The Society argues that because the independent living units are a part of 'continuum of care' provided elderly persons in both the nursing home and the independent living units that this portion of the facility qualifies under the hospital exemption for tax exempt status.
>
> In *Bistline v. Bassett*, 47 Idaho 66, 272 P. 696 (1928), we defined a hospital to be an 'institution for the reception and care of the sick, wounded, infirm or *aged* persons; generally incorporated, and then of the class of corporations called "eleemosynary" or "charitable." ' *Id.* at 47 Idaho 71, 272 P. at 698 (*quoting Bouvier's Law Dictionary,* p. 1459; *Black's Law Dictionary,* p. 580) (emphasis added).

119 Idaho at 129, 804 P.2d at 302 (1990).

Being now reacquainted with the *Bassett* case, from which the court borrows its definition of a hospital, I respectfully submit that that ancient definition be relegated to the scrap heap in favor of this statutory definition:

> (7) 'Hospital' means a place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care for not less than twenty-four (24) hours in any week of two (2) or more non-related individuals suffering from illness, disease, injury, deformity, or requiring care because of old age, or a place devoted primarily to providing for not less than twenty-four (24) hours in any week of obstetrical or other medical or nursing care for two (2) or more non-related individuals. The term 'hospital' includes public health care centers in general, tuberculosis, mental chronic disease and other types of hospitals, and related facilities, such as laboratories, out-patient departments, hospital affiliated nursing homes, nurses' homes and training facilities, and central service facilities operated in connection with hospitals.

I.C. § 41–3702(7).

No opinion is ventured as to how that definition might affect the exemption issue, but at the least it would be a sixty-two year update, and being a product of the legislature, it would seem to preempt the field insofar as understanding what may be regarded as a hospital in making the decision as to a claimed exemption from taxation.

No matter what definition is used, there is in my view no sound basis for holding eighty year old (and even older residents) requiring *care* and *supervision,* together with housing, do not fit within the definition of a hospital or facility (terminology is but a game of little import); truly they are the aged and infirm. The question which keeps surfacing in such matters is this: Were the Good Samaritan Society not providing these accommodations and facilities in Moscow, Idaho, just how, then, would that void be filled?