893 P.2d 211 (1995)
126 Idaho 848
In the Matter of the ESTATE OF Bryan Rudolph WAGNER, Deceased.
Terry Lynn HALL, Appellant-Appellant on Appeal,
v.
Elizabeth BECKER, Respondent-Respondent on Appeal.
No. 20983.
Supreme Court of Idaho, Lewiston, October 1994 Term.
April 4, 1995.
*212 Joseph C. Adams, Lewiston, for appellant.
John A. Church, Lewiston, for respondent.
SILAK, Justice.
This is an appeal from an order of the district court reversing the magistrate's finding that no common law marriage existed *213 between the decedent and the respondent. We reverse the district court's decision, vacating its order, and reinstate the order of the magistrate.

I.

FACTS AND PROCEDURAL BACKGROUND
In approximately September 1992, the decedent, Bryan Rudolph Wagner (Wagner), and respondent, Elizabeth Becker (Becker), and her ten year old daughter from a previous marriage, Crystal Lee Becker, began living together in Becker's house in Lewiston, Idaho. In November 1992, Wagner proposed marriage to Becker and she accepted. Becker claims that she and Wagner consented to a common law marriage at the time he asked her to marry him in November 1992, and that they had an oral contract of marriage from that time on. A ceremonial marriage was planned for April 1993 in Reno, Nevada. Becker testified that even though they were common law married in November 1992, the couple wanted a ceremonial marriage for religious purposes.
Becker's Idaho driver's license expired in December 1992. She testified that she did not renew it under the name of Wagner because she did not know how to legally change it due to the common law marriage.
In January 1993, Wagner and Becker purchased wedding rings on layaway. The rings were paid off in early March 1993, and Becker immediately began wearing her ring.
In February 1993, Becker changed the name on her checking account at First Security Bank to Wagner. Although Becker received a letter from the bank informing her that in order for her to change the name on her account she was required to provide new signature cards and a copy of a marriage license, the checks were printed with the change. Becker wrote checks on this account, but not until after Wagner died. Wagner and Becker did not have a joint checking or savings account at any time.
Becker also ordered and received a First Security Cash Card in the name of Liz Wagner, and a Sprint Foncard in the name of Liz A. Wagner. The cash card was ordered at the same time she changed the name on her checking account, and the Sprint card was changed in early March 1993.
Becker testified that she and Wagner each contributed funds for groceries and each paid certain of the household bills. She also testified that they saved cash in a coffee can for the purchase of the wedding rings and the planned trip to Reno, Nevada in April 1993.
On March 19, 1993, Wagner died intestate. Thereafter, Becker filed an application for informal appointment as personal representative claiming that her interest in Wagner's estate was that of spouse at common law. Pursuant to her application, the magistrate, acting as registrar, appointed Becker personal representative of the decedent. At the same time, he issued letters of administration to Becker.
In April 1993, Appellant Terry Lynn Hall (Hall), the mother of the decedent, filed a petition for removal of personal representative, claiming that Becker either mistakenly or intentionally misrepresented in her petition for appointment that she was the common law wife of Wagner.
After a hearing on Hall's petition, the magistrate issued an opinion and order ruling that a common law marriage did not exist between Wagner and Becker. Hall's petition was therefore granted and letters of administration were issued to her.
On appeal, the district court reversed the magistrate's ruling, finding that a common law marriage existed between Wagner and Becker. Becker was thus reappointed personal representative of Wagner's estate. Hall appealed to this Court.
The issue on appeal is whether the magistrate court's findings are supported by substantial, competent evidence.

II.

ANALYSIS

A. STANDARD OF REVIEW
When this Court reviews a case appealed from a district court's appellate review of a magistrate' decision, we make an *214 independent appellate review of the magistrate's decision, after giving due regard to the district court's ruling. Ausman v. State, 124 Idaho 839, 840, 864 P.2d 1126, 1127 (1993); In re Estate of Reinwald, 122 Idaho 401, 402, 834 P.2d 1317, 1318 (1992); McNelis v. McNelis, 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). It is well settled in this jurisdiction that the trial court is the arbiter of conflicting evidence. Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County, 119 Idaho 126, 128, 804 P.2d 299, 301 (1990). The credibility of witnesses and the weight to be given evidence is in the province of the trier of fact. Id., at 129; 804 P.2d at 302. Thus, on appeal, this Court will not disturb the trial court's factual findings where they are supported by substantial and competent evidence, even though such evidence may be conflicting. Id.; MacNeil v. Minidoka Memorial Hosp., 108 Idaho 588, 589, 701 P.2d 208, 209 (1985); Freiburghaus v. Freiburghaus, 103 Idaho 679, 681, 651 P.2d 944, 946 (Ct.App.1982). An appellate court will, however, review questions of law freely. Ausman, 124 Idaho at 841, 864 P.2d at 1128; Clements Farms, Inc. v. Ben Fish & Son, 120 Idaho 185, 188, 814 P.2d 917, 920 (1991).

B. THE TRIAL COURT DID NOT ERR IN RULING THAT NO COMMON LAW MARRIAGE EXISTED BETWEEN BECKER AND WAGNER.

1. The Current State of the Law.

A non-ceremonial marriage may be proven by a preponderance of the evidence in Idaho.[1] Once a common law claimant proves the elements of a common law marriage by a preponderance of the evidence, this Court has held that a presumption of validity of the marriage arises and the burden of production shifts to the opposing party to show by clear and positive proof that the asserted marriage is invalid. Metropolitan Life Ins. Co. v. Johnson, 103 Idaho 122, 126, 645 P.2d 356, 360 (1982); Mauldin v. Sunshine Mining Co., 61 Idaho 9, 17, 97 P.2d 608, 611 (1939).
In deciding whether a common law marriage exists, we must first look to the pertinent statutory provisions. They are:
I.C. § 32-301. How solemnized.  Marriage must be solemnized, authenticated and recorded as provided in this chapter, but noncompliance with its provisions does not invalidate any lawful marriage.
I.C. § 32-201. What constitutes marriage.  Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties or obligations.
I.C. § 32-203. Proof of consent and consummation.  Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.
These statutes set forth two general requirements for a finding that a common law marriage exists: 1) consent by the parties to enter into a contract of marriage, given at the time of contracting; and 2) the mutual assumption of marital rights, duties and obligations. Metropolitan Life Ins. Co., 103 Idaho at 127, 645 P.2d at 361; Hamby v. J.R. Simplot Co., 94 Idaho 794, 796, 498 P.2d 1267, 1269 (1972).
Although not separately designated elements of the doctrine under the statutory framework, proof of cohabitation of the parties and holding oneself out as being married are two of the best methods for proving that there was consent to the contract in the absence of a writing to that effect. With respect to the consent element, we have held that it need not be manifest by any identifiable conduct nor are there any magic words which must be spoken. Rather, consent may be express or implied from the parties' conduct. Evidence of conduct by and between the parties consistent with the existence of a common law marriage thus may be probative of consent. For example, when competent parties have held themselves out to be husband *215 and wife and have gained the general reputation in the community as being such, or where they acknowledge they are husband and wife, a court may draw the inference that there was mutual consent between the parties to assume a marital relationship. Metropolitan Life Ins. Co., 103 Idaho at 127, 645 P.2d at 361. Further, it is clear from this Court's prior cases that the element of consent found in I.C. § 32-201 may be proven by circumstantial evidence such as cohabitation, reputation and the manner in which the couple characterize their relationship. See, e.g., Id.; In re Estate of Brock, 94 Idaho 111, 482 P.2d 86 (1971); In re Foster, 77 Idaho 26, 287 P.2d 282 (1955); Nicholas v. Idaho Power Company, 63 Idaho 675, 125 P.2d 321 (1942); Mauldin v. Sunshine Mining Co., 61 Idaho 9, 97 P.2d 608 (1939). Because frequently, questions as to the existence of such a marriage arise after the death of one party, common law marriage may be proven by the testimony of only the surviving party. Mauldin, 61 Idaho at 18, 97 P.2d at 611.
With respect to the present case then, Becker was required to make a prima facie showing of consent to marriage along with an assumption of marital rights, duties and obligations. This showing could have been made by evidence that she and Wagner assumed marital rights, duties, and obligations, cohabited, and held themselves out as being married. If she made such a showing, a presumption of the validity of the marriage would arise, shifting the burden to Hall to rebut the presumption by clear and positive proof of its invalidity. Metropolitan Life Ins. Co., 103 Idaho at 127, 645 P.2d at 361.

2. The Magistrate Did Not Err in Concluding that Becker Failed to Make a Prima Facie Showing of Common Law Marriage and that the Presumption of Marriage Therefore Did Not Arise.

In the present case, the magistrate found that Wagner and Becker began cohabiting in approximately September 1992. We hold that his finding is clearly supported by the record, and that the parties cohabited from September 1992 until Wagner's death in March 1993.
With respect to the element of the assumption of marital rights, duties and obligations, Hall argues that the magistrate correctly found that Becker had failed to offer sufficient proof of such assumption. We agree.
Becker claims that she and Wagner became common law husband and wife in November 1992 when Wagner proposed to her. However, for the year ending December 31, 1992, she filed a separate "Head of Household" income tax return. Wagner filed a "Single" tax return rather than a "Married" return even though, the magistrate found, he had recently had severe tax liability problems and the filing of a "Married" return would have affected both his and Becker's tax consequences for 1992. Additionally, between the date of the alleged marriage in November 1992, and Wagner's death in March 1993, Becker did not change her employment records. Although she did change the name on her checking account, ATM card and her Sprint Foncard from Becker to Wagner, these changes were not made until February and March 1993, and are more indicative of preparation for her upcoming April wedding.
Wagner and Becker did not commingle their funds. Although allegedly married in November 1992, they held no joint financial accounts at the time of Wagner's death, and neither deposited funds into the other's accounts. While the evidence shows that there was some commingling in the form of cash being set aside by both of them in a coffee can to pay for wedding rings and a trip to Reno, Nevada for the wedding ceremony, such commingling is too minimal to warrant a finding of assumption of the rights, duties and obligations of marriage. Further, the finding that Becker and Wagner were each responsible for certain household debts is evidence of non-commingling of funds. Thus, we hold that Becker failed to make an adequate showing that she and Wagner assumed the rights, duties and obligations of marriage.
With respect to the element of holding themselves out in the community as being married, the magistrate found the evidence *216 to be conflicting. According to the record, there were a few occasions in which Wagner may have referred to Becker in such a way that the listener could believe they were married. However, the instances in which both Wagner and Becker could have addressed the other as husband and wife, but did not do so, far outweigh the other. Indeed, Becker testifies that she never introduced Wagner as her husband and he never introduced her as his wife. In fact, there was evidence that Wagner introduced Becker as his "fiance" at a Christmas party in December 1992. We hold that the magistrate's findings are supported by substantial and competent evidence, even though conflicting. The magistrate is in the best position to judge the demeanor and credibility of the witnesses.
We do not place too much weight on the magistrate's finding that Becker and Wagner were not married because Becker did not change the name on her driver's license in December 1992 when she had an opportunity to do so due at its expiration. In our current times, many women for many reasons choose to retain their maiden names after they are married. This may not be the case here, however, since Becker did change her name on two accounts prior to the planned April 1993 wedding. In any event, we hold that the evidence on the element of Becker and Wagner holding themselves out as being married is conflicting, and therefore defer to the findings of the trial court. Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County, 119 Idaho 126, 128, 804 P.2d 299, 301 (1990).

III.

CONCLUSION
We hold that the magistrate's finding that the presumption of marriage did not arise in this case is supported by substantial and competent evidence. Although there is no question that Becker and Wagner cohabited from September 1992 until Wagner's death in March 1993, the evidence is conflicting with respect to whether the couple assumed marital rights, duties and obligations, and whether they held themselves out to the community as husband and wife. We will not disturb the trial court's factual findings where they are supported by substantial and competent, although conflicting, evidence. Because the presumption of a valid marriage did not arise, the burden never shifted to Hall to prove by clear and positive evidence that the marriage was invalid. Accordingly, the order of the district court is vacated, and the order of the magistrate is reinstated.
No attorney's fees on appeal. Costs to appellant.
McDEVITT, C.J., JOHNSON and TROUT, JJ., and BURDICK, Justice Pro Tem., concur.
NOTES
[1] It should be noted that common law marriage has been abolished effective January 1, 1996, pursuant to H.B. 176, enacted as chapter 104 of the 1995 Idaho Session Laws.