48 P.3d 644

**In the Matter of the Estate of Albert E. Wilkins, Deceased.**

**Charlotte Ackley WILKINS, Appellant–Appellant on Appeal,**

v.

**Gene WILKINS, Respondent–Respondent on Appeal.**

No. 26347.

Supreme Court of Idaho, Boise, March 2002 Term.

June 3, 2002.

Greenwood Law Office, Twin Falls, for appellant.

Parker & Warr, Twin Falls, for respondent.

KIDWELL, Justice.

This is an appeal by a beneficiary of the will of the deceased, challenging the magistrate division's decisions regarding the admissibility of a separate writing under I.C. § 15-2-513, distributions of personal property under the will, and the alleged common law marriage between the appellant and the deceased. We affirm the decision of the magistrate division.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Albert Wilkins (Albert) died in late 1997 and is survived by five adult children, including the respondent, Gene Wilkins, who is the co-personal representative of Albert's estate.

Charlotte Ackley Wilkins, as she prefers to be called (Charlotte), cohabited with Albert for approximately fourteen years prior to Albert's death. Albert caused several wills to be drafted between 1989 and 1997, some of which were executed and some of which were not. In 1995, Albert executed a will to which was attached a writing referred to as a "Gift By Memorandum" and signed by Albert. The Gift By Memorandum was intended to dispose of various items of personal property belonging to Albert in accordance with I.C. § 15-2-513. Shortly before his death in 1997, Albert executed a final will, which was admitted to probate and which is the subject of this dispute.

Charlotte is one of the devisees in Albert's will. She contended throughout the probate proceedings that she was Albert's common law wife and that she therefore was entitled to a community property distribution outside the provisions of the will. The magistrate division found that the 1995 Gift By Memorandum was not revoked by the 1997 will and therefore admitted it to probate along with the will in order to guide the disposition of Albert's estate. The court also determined that Charlotte and Albert did not establish a common law marriage prior to January 1, 1996, and that characterization and division of community property was therefore unnecessary. After the magistrate issued final orders closing the estate, Charlotte appealed to the district court, raising several issues. The district court affirmed the magistrate division on all of the appealed issues, although some were affirmed on alternative theories.

Only three of the issues raised on appeal to the district court are raised on appeal to this Court: whether the magistrate division erred: (1) by admitting the 1995 Gift By Memorandum to probate, (2) by interpreting the sixth paragraph of the will, reprinted in the analysis section below, to provide that Charlotte was only to receive "tangible" personal property, as opposed to "intangible" personal property, and (3) by determining that there was not a common law marriage between Charlotte and Albert.

## II.

### STANDARD OF REVIEW

■ This Court reviews the decisions of the magistrate division independently, with due regard for the decision of the district court acting in its appellate capacity. *Stevens v. Stevens*, 135 Idaho 224, 227, 16 P.3d 900, 903 (2000).

A trial court's findings of fact will not be set aside unless clearly erroneous, which is to say that findings that are based upon substantial and competent, although conflicting, evidence will not be disturbed on appeal. *DeChambeau v. Estate of Smith*, 132 Idaho 568, 571, 976 P.2d 922, 925 (1999). The credibility and weight to be given evidence is in the province of the trial court, and this Court liberally construes the trial court's findings of fact in favor of the judgment entered. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). However, when the issue is one of law, this Court exercises free review of the trial court's decision. *Id.*

## III.

### ANALYSIS

**A. The Court Did Not Err In Its Determination That The 1995 Gift By Memorandum Is A Valid Testamentary Document That Should Be Probated With The 1997 Will.**

Albert created the Gift By Memorandum pursuant to the provisions of I.C. § 15-2-513, which provides:

**Separate writing identifying bequest of tangible property.**

Whether or not the provisions relating to holographic wills apply, a will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will, other than money, evidences of indebtedness, documents of title, and securities, and property used in trade or business. To be admissible under this section as evidence of the intended disposition, the writing must either be in the handwriting of the testator or be signed by him and must describe the items and the devisees with reasonable certainty. The writing may be referred to as one to be in existence at the time of the testator's death; it may be prepared before or after the execution of the will; it may be altered by the testator after its preparation; and it may be a writing which has no significance apart from its effect upon the dispositions made by the will.

I.C. § 15-2-513.

The Gift By Memorandum provided for distributions of various items of personal property to Albert's children. The magistrate division admitted this document to probate and made distributions to Albert's children according to its provisions. Charlotte argues that the magistrate division erred by admitting the Gift By Memorandum for two reasons. First, she argues that the lead-in paragraph to the will revoked the Gift By Memorandum. Second, she argues that it would be contrary to Albert's intent, as expressed in the sixth paragraph of the will, to dispose of his property according to the Gift By Memorandum.

■ The lead-in paragraph to Albert's 1997 will provides, in relevant part:

I, ALBERT E. WILKINS ... do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all other and former wills and testamentary powers of any kind heretofore made by me. . . .

As a separate writing under I.C. § 15-2-513, the Gift By Memorandum is not a testamentary disposition or instrument. It has no effect standing alone; rather, its effectiveness relies on the existence of a validly executed will. Consequently, it was not revoked by the "testamentary powers of any kind" language of Albert's 1997 will.

■ To ascertain whether, under the sixth paragraph of the 1997 will, Albert intended the Gift By Memorandum to control the disposition of property, we begin with the words of the 1997 will. "The intention of a testator as expressed in his will controls the

legal effect of his dispositions...." I.C. § 15-2-603. If the language of a will is clear and unambiguous, the intent of the testator is derived from the will as it reads on its face. *Allen v. Shea*, 105 Idaho 31, 34, 665 P.2d 1041, 1044 (1983). "[I]n construing the provisions of a will to ascertain the meaning of a testator, the cardinal rule of construction is to ascertain the testator's intent; and ... [t]his intent is to be ascertained from a full view of everything within the four corners of the instrument." *Jones v. Broadbent*, 21 Idaho 555, 559, 123 P. 476, 477 (1912).

The sixth paragraph of Albert's will provides:

> SIXTH: It is my intention *to make* a separate written instrument leaving items of tangible personal property to various people as allowed by Section 15-2-513 of the Idaho Code. All items not listed by me, or *should no list be made* by me, then all items of various personal property not specifically listed to go to specific persons shall pass to Charlotte Ackley, including my personal effects, clothes, household furnishings, furniture, and appliances.

(Emphasis added). Charlotte argues that the italicized language of the sixth paragraph indicates that Albert contemplated a writing to be made in the future, not one in existence when the will was executed. We disagree.

■ This paragraph specifically contemplates the existence of and authorizes the effectiveness of a separate writing pursuant to I.C. § 15-2-513. The Gift By Memorandum was prepared before the execution of the 1997 will, which is permissible under I.C. § 15-2-513, and there is no indication in the record that any other such writing exists. The 1997 will generally devises property that, by its character, cannot be left by a separate writing under I.C. § 15-2-513. In contrast, the Gift By Memorandum describes items of property that are not specifically mentioned in the will, as well as the devisees of those items, with great specificity. As noted by the district court, the Gift By Memorandum provides for the distribution of automobiles, rifles, antiques and other items,

"memorializing the personal effects Albert wished to leave to his many loved ones, including Charlotte." The sixth paragraph contains boilerplate-like, open-ended language, which is broad enough in scope to demonstrate an intent to include prior writings, and which demonstrates Albert's desire to specifically devise property not mentioned in his will.

We affirm the magistrate division's decision to admit the 1995 Gift By Memorandum to probate as evidence to guide the disposition of Albert's estate.

**B. The Court Did Not Err In Its Interpretation Of The Second Sentence Of The Sixth Paragraph Of The 1997 Will When It Determined That This Provision Applies Only To Tangible Personal Property.**

■ Charlotte argues that the magistrate division erred in awarding "intangible" personal property—like certificates of deposit, cash, and contracts—to Albert's children under the will's residuary clause. She argues that, even if the Gift By Memorandum was properly admitted to probate, the second sentence of the sixth paragraph directs that all personal property not mentioned in the Gift By Memorandum or in the will should be awarded to her, including both "tangible" and "intangible" personal property. The respondents argue that the sixth paragraph, when read as a whole, only directs that Charlotte receive "tangible" personal property not otherwise mentioned in the Gift By Memorandum or in the will. The parties have not challenged the magistrate division's view of what constitutes "tangible" or "intangible" personal property.

The sixth paragraph, reproduced above, unambiguously limits its applicability to "tangible" personal property similar to the types specifically listed therein and not excluded under I.C. § 15-2-513. The first sentence authorizes the creation of a list directing the distribution of tangible personal property pursuant to I.C. § 15-2-513. The second sentence provides that, in case Albert

fails to create such a list, or if the list is incomplete, Charlotte is to get the remaining personal property for which no other provision is made pursuant to the first sentence. The absence of the word "tangible" from the second sentence does not negate its relation to the first sentence. The paragraph is one unit and, when read as such, applies only to "tangible" personal property.

Consequently, the magistrate division correctly determined that Charlotte was not entitled to receive Albert's intangible personal property under the sixth paragraph, and we affirm the resulting distributions of property.

## C. The Court Did Not Err In Its Determination That There Was No Common Law Marriage Between The Appellant And The Decedent.

■ Charlotte argues that she and Albert formed a valid common law marriage, and that she was therefore entitled to a distribution of her share of their community property. Charlotte admits that the parties consciously refrained from obtaining a marriage certificate and going through a "ceremonial" marriage because, if it were discovered that she had remarried, she would lose the benefits she was receiving from the Meat Cutter's Union on behalf of her deceased husband, and perhaps her Social Security benefits as well.

Common law marriages were recognized in Idaho prior to January 1, 1996. The relevant statutes, as they existed prior to January 1, 1996, were as follows:

I.C. § 32–201. WHAT CONSTITUTES MARRIAGE.—Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties or obligations.

I.C. § 32–301. HOW SOLEMNIZED.— Marriage must be solemnized, authenticated and recorded as provided in this chapter, but noncompliance with its provisions does not invalidate any lawful marriage.

The current versions of these code sections, effective as of January 1, 1996, provide that a valid common law marriage may not be formed after that date.

■ In order to demonstrate the existence of a common law marriage, the evidence must show that the parties were both capable of giving consent, and did in fact consent, to the common law marriage at its inception. *Hall v. Becker (In re Wagner)*, 126 Idaho 848, 851, 893 P.2d 211, 214 (1995). The parties must assume the rights, duties and obligations of marriage. *Id.* The parties' consent may be either expressed or implied by their conduct. *Id.* If consent is implied, the best and most common, although not exclusive, method of proving consent is to show cohabitation, general reputation in the community as husband and wife, and holding oneself out as married. *Id.; Metropolitan Life Ins. Co. v. Johnson*, 103 Idaho 122, 127, 645 P.2d 356, 361 (1982). From such evidence, the court may infer that, at the outset, mutual consent was present. *Id.* Because questions as to the existence of such a marriage frequently arise after the death of one party, common law marriage may be proven by the testimony of only one surviving party. *Wagner*, 126 Idaho at 851, 893 P.2d at 214. Once the parties to the alleged common law marriage establish a prima facie case by a preponderance of the evidence, a presumption of marriage exists, which must be overcome by the opposing party with clear and convincing evidence. *In re Wagner*, 126 Idaho at 851, 893 P.2d at 214; *Metropolitan Life*, 103 Idaho at 127, 645 P.2d at 361. Once parties agree or consent to marry and consummate the marriage by mutual assumption of marital rights, duties and obligations, their subsequent actions cannot defeat the marriage, because there is no common law divorce. *Id.* at 128, 645 P.2d at 362.

The magistrate division made voluminous and detailed findings of fact regarding the equally voluminous record related to the conduct of Charlotte and Albert during the course of their relationship.

The magistrate division first found that, through direct testimony and circumstantial evidence in her case in chief, Charlotte had produced enough evidence to establish a prima facie case of common law marriage, thereby shifting the burden to the respondents to dispute the marriage. That finding is supported by substantial and competent evidence.

The court then found that the estate proved by clear and convincing evidence that there was not a valid common law marriage, based on the following findings. The court found that Charlotte and Albert considered each other to be something less than a spouse and more like a "good friend." While they may have assumed a few of the rights and benefits of being married, their tax and financial records reveal that they took on very few of the duties and obligations of marriage, and that there was no commingling of assets whatsoever. Additionally, the court focused on the fact that that Charlotte kept a dual identity of sorts, attempting to maintain her single status in order to receive benefits and in various transactions involving her bank accounts and real property, while claiming marital status for the purpose of receiving a division of community property. Finally, the court found that, comparing the testimony of the various witnesses called by each party, it was abundantly apparent that Charlotte and Albert did not have a uniform and general reputation in the community as a married couple.

The magistrate division's findings are supported by substantial and competent, although conflicting, evidence in the record. The court correctly applied the law to these findings to hold that that the respondents proved by clear and convincing evidence that Albert and Charlotte failed to form a valid common law marriage. Despite Charlotte's arguments to the contrary, the facts of this case are distinguishable from *Metropolitan Life Ins. Co. v. Johnson*, 103 Idaho 122, 127, 645 P.2d 356, 361 (1982), in which this Court found a valid common law marriage, and that case does not control the result here. Consequently, we affirm the magistrate division's decision not to trace and divide community property, because there was no common law marriage.

## IV.

## ATTORNEY FEES ON APPEAL

The respondent seeks an award of attorney fees on appeal pursuant to I.C. § 12–121. Because Charlotte's appeal was not brought or pursued frivolously, unreasonably, or without foundation, no attorney fees are awarded on appeal. I.R.C.P. 54(e)(1).

## V.

## CONCLUSION

The magistrate division did not err by admitting the 1995 Gift By Memorandum to probate as evidence to guide the disposition of Albert's estate. The sixth paragraph of Albert's will bequeathed only "tangible" personal property to Charlotte. The magistrate division's findings regarding the existence of a common law marriage are supported by substantial and competent evidence and, based on those findings, there was no common law marriage. Consequently, the decision of the magistrate division is affirmed. No attorney fees are awarded on appeal. Costs on appeal are awarded to the respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.