**Linda VUKMIR, Personal Representative of the Estate of Louis Vukmir, Appellant,**

v.

**Michael D. VUKMIR and Mary Lou Vukmir Epperson, Appellees.**

No. S–10594.

Supreme Court of Alaska.

Aug. 1, 2003.

Robert C. Erwin and Roberta C. Erwin, Erwin & Erwin, Anchorage, for Appellant.

Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Linda Vukmir appeals the superior court's holding that she is responsible for the mortgage debt on her father's home, which she purchased by exercising an option bequeathed to her in her father's will. We affirm the superior court's assignment of the mortgage debt to Linda because we conclude that the language of the will clearly states that the heirs were not responsible for the debt in the event that Linda exercised her option.

## II. FACTS AND PROCEEDINGS

### A. Facts

Louis Vukmir died on August 22, 1998. His valid will, dated July 27, 1992, was admitted to probate on September 23, 1998. Pursuant to the will, the same court order named Linda E. Perkins (formerly Vukmir) as the estate's personal representative.

The will distributed Louis's property to his four children: Linda, George D. Vukmir, Michael D. Vukmir, and Mary Lou Vukmir Epperson. Paragraph five of the will provided that Louis's residual estate be divided with Linda receiving thirty-five percent, George and Michael each receiving twenty-five percent, and Mary Lou receiving fifteen percent. Paragraph four of the will, entitled "Specific Gifts," gave Linda an option to "purchase [Louis's] residence from [his] estate by paying the amount of $80,000.00 to [his] estate" within one year of Louis's death. The will further directed that this "amount" be divided among the heirs pursuant to the formula used to distribute the residual estate.

In November 1998 Linda negotiated the sale of the residence for $152,000, using an $80,000 advance from the buyer to purchase the residence from the estate. In exercising her option, Linda used the $80,000 payment to the estate to pay the outstanding mortgage debt of approximately $35,000 on the residence. She deposited the remaining $45,000 into the estate account for division among the testator's heirs.

## B. Proceedings

Linda, acting as the estate's personal representative, filed a petition for final settlement and distribution on January 5, 2000. This petition sought approval of the proposed distribution of the testator's estate, including the above transactions concerning Linda's sale of the residence. Michael and Mary Lou objected to several portions of the proposed settlement and distribution, including the proposed treatment of Linda's sale of the testator's residence. Michael and Mary Lou claimed that the will provision constituted a specific devise to Linda, and that Linda therefore took the residence subject to the existing mortgage debt. Linda maintained that she was free to retain the entire $72,000 profit from her resale of the residence because the estate was liable for the mortgage debt.

This controversy was brought before Probate Master John E. Duggan for an evidentiary hearing on June 15, 2000. In its September 15, 2000 report, the probate court agreed with Michael and Mary Lou that the gift was a specific devise and applied AS 13.12.607 to hold that Linda did not have a right to exoneration of the mortgage debt by the estate.[1]

Linda objected to Master Duggan's report, contending that he erred in characterizing the gift as a specific devise subject to nonexoneration under AS 13.12.607. Superior Court Judge Stephanie E. Joannides agreed with Linda and remanded this issue back to the probate court for consideration of additional evidence as to the sale of the testator's residence.

The probate court filed a supplemental report on July 2, 2001 in which it reconsidered its earlier findings, concluding that the clear language of the will gave Linda an option to purchase the residence rather than a specific bequest. The probate court went on to find, based entirely on its interpretation of paragraphs four and five of the will, that the will provides that the full purchase price of $80,000 is a specific gift to be distributed among the heirs. The probate court found that Linda exercised her option to purchase the residence subject to the outstanding mortgage debt, and recommended that Linda be ordered to divide the full $80,000 purchase price among the heirs. Linda objected to the supplemental report, arguing that the clear language of the will and extrinsic evidence of mortgage debt at the time the will was made demanded that she not be held liable for the debt. On February 2, 2002 Superior Court Judge Morgan Christen adopted the July 2, 2001 supplemental report concerning the sale of the testator's residence. The superior court entered a final judgment consistent with this order, directing Linda to personally pay the mortgage debt on the home, on March 26, 2002. Linda appeals.

1. AS 13.12.607 states that "[a] specific devise passes subject to any mortgage interest existing at the date of death, without right of exoneration, regardless of a general directive in the will to pay debts."

**920**

## III. STANDARD OF REVIEW

Linda argues that we should review the superior court decision regarding her sale of the testator's residence *de novo* because the interpretation of a written document is a question of law. Michael and Mary Lou respond that the superior court made a factual finding regarding the testator's intent which should be reviewed under the clearly erroneous standard.

■ We held in *Smith v. Estate of Peters*[2] that "[b]ecause the testator's intent is a question of fact, the trial court's decision to label a legacy as demonstrative or specific will not be set aside unless it is clearly erroneous."[3] However, in *Smith* the superior court was required to consider extrinsic evidence. The rule in *Smith* does not govern a case in which the superior court determined the testator's intent solely through an examination of the will. Several states have held that in these circumstances, that is, absent the need to consider extrinsic evidence, questions concerning the interpretation of a will are questions of law that are reviewed *de novo*.[4] This comports with Alaska law generally concerning the interpretation of written documents: "[Q]uestions of interpretation of the meaning of written documents are treated as questions of law for the court except where they are dependent for their resolution on conflicting extrinsic evidence."[5] Accordingly, we apply the *de novo* standard of review here because the superior court relied exclusively on the language of the will in determining the testator's intent.

## IV. DISCUSSION

**The Will Requires that Linda Pay the Outstanding Mortgage Debt in Addition to the $80,000 Purchase Price.**

■ Several courts have held that when a testator's or testatrix's intent is clear from the language in a will, it is unnecessary for a court to examine extrinsic evidence to determine his or her intent.[6] We agree with these courts that it is unnecessary to look beyond the words of a will when those words clearly express the testator's or testatrix's intent. Therefore, if the language of paragraph four is clear, there is no need to examine, or remand to develop, extrinsic evidence.

This controversy over the interpretation of the testator's will centers on paragraph four of the will, which reads in relevant part:

> I direct that my residence, 2615 Galewood Ave., Anchorage, Alaska be sold by my personal representative under whatever terms she thinks best; provided, however, that my daughter, LINDA VUKMIR may purchase my residence from my estate by paying the amount of $80,000.00 to my estate which amount shall be distributed among my heirs as set out in paragraph five. Should LINDA VUKMIR desire to purchase the residence, she shall make the payment set out above to my estate within one year of the time of my death otherwise, the property shall be sold with the proceeds distributed pursuant to paragraph five.

The superior court adopted the probate court's interpretation that this paragraph provided that "if Linda Perkins exercised her option to purchase the residence for $80,000.00 then the sum of $80,000.00, and not a lesser residual amount, was to be distributed to the heirs as a 'specific gift.'" This holding classified the gift of the entire $80,000 from the exercise of the option as a specific bequest to the heirs to be divided in accordance with paragraph five of the will. Under this interpretation of the will Linda purchased Louis's residence subject to the outstanding mortgage debt.

**2.** 741 P.2d 1172 (Alaska 1987).

**3.** *Id.* at 1174.

**4.** *E.g., In re Estate of Bem,* 247 Mich.App. 427, 637 N.W.2d 506, 509 (2001); *In re Estate of Kuruzovich,* 78 S.W.3d 226, 227 (Mo.App.2002); *Summers v. Summers,* 121 Ohio App.3d 263, 699 N.E.2d 958, 961 (1997).

**5.** *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,* 778 P.2d 581, 584 (Alaska 1989).

**6.** *Wilkins v. Wilkins,* 137 Idaho 315, 48 P.3d 644, 647–48 (2002); *In re Estate of Bem,* 637 N.W.2d at 509–10; *Summers,* 699 N.E.2d at 961; *In re Jacobson's Estate,* 460 Pa. 118, 331 A.2d 447, 449 (1975); *In re Estate of Martin,* 635 N.W.2d 473, 477 (S.D.2001).

Linda argues that the will bequeathed to her the option to purchase the residence by paying only $80,000 to the estate.[7] She points to paragraph four, which states that "[Linda] may purchase my residence from my estate by paying the amount of $80,000.00 to my estate" and that "[s]hould [Linda] desire to purchase the residence, she shall make the payment set out above to my estate within one year of the time of my death." She contends that this language means that she could purchase the residence for a total price of $80,000 rather than the price of the $80,000 payment to the heirs plus the $35,802.91 needed to satisfy the outstanding mortgage debt.

Michael and Mary Lou respond that the will establishes the testator's intent to divide the entire $80,000 payment from Linda, rather than $80,000 minus the mortgage debt, between the heirs. They argue that the superior court was correct in characterizing paragraph four of the will as a specific bequest of exactly $80,000 to the four heirs in the event that Linda exercised her option.

■ We agree with the superior court: The will is open to only one reasonable interpretation of the testator's intent. The will envisions two gifts: (1) a gift to Linda of an option to purchase the residence for $80,000 plus the outstanding mortgage debt and (2) a gift to all of the heirs to receive the full $80,000 payment split in accordance with the formula set forth in paragraph five of the will. Linda's argument that the will states that she is entitled to purchase the residence for only $80,000 appears reasonable only if the portions of the will she relies upon are read out of context. Linda misinterprets the testator's intent by focusing on the first half of the will's key sentence. The complete sentence states that "[Linda] may purchase my residence from my estate by paying the amount of $80,000.00 to my estate *which*

amount shall be distributed among my heirs as set out in paragraph five." (Emphasis added.) When read in its entirety, this sentence states that the entire $80,000 payment should be divided between the heirs because it uses the phrase "which amount" to refer to the $80,000 payment. This sentence clearly conveys the testator's intent to provide the heirs with a specific bequest in the amount of exactly $80,000, not $80,000 minus the mortgage debt, in the event that Linda exercises her option to purchase the house. If Linda exercises her option but does not pay the mortgage debt, the heirs would not receive the entire $80,000 bequest envisioned by the testator.

This result is even clearer when the provision governing Linda's exercise of the option is read in conjunction with the provision governing the gift to the heirs in the event that Linda declined to exercise her option and the residence was sold to someone else. The will uses the phrase, "the property shall be sold with the proceeds distributed pursuant to paragraph five" to describe the gift to the heirs in the event that Linda declined to exercise her option. This phrase clearly reflects the testator's understanding that the mortgage debt would have to be satisfied out of the sale price, as it provides the heirs with "the proceeds" from the sale rather than a specific amount of money. This stands in stark contrast to the language used to describe the gift to the heirs in the event that Linda exercised her option: a specific "amount," "$80,000," which shall be divided among the heirs. This evinces the testator's intent that the heirs receive the full, specified amount of $80,000, rather than the remainder of the purchase price minus the mortgage debt they would have received in the event that Linda declined to exercise her option. Because the language of the will clearly expresses the testator's intent to provide the heirs with the full $80,000 payment, Linda is

---

7. She also argues that the testator's intent to limit her total cost to $80,000 can be deduced by reading the will in conjunction with established precedent that estate debts, such as the mortgage debt at issue in this case, should be satisfied out of the residual estate rather than transferred to an heir. Because we hold that the testator's intent is clearly expressed by the language of the will, there is no need to examine precedent gov-

erning the exoneration of an estate's debt in order to determine the testator's intent. Similarly, we do not examine the arguments made by the parties suggesting that their interpretation of the will is supported by extrinsic evidence not considered by the probate and superior courts. There is no need to resort to an examination of extrinsic evidence of the testator's intent because the will clearly expresses his intent.

responsible for paying the mortgage debt in addition to the $80,000 exercise price of her option.[8]

## V. CONCLUSION

We AFFIRM the superior court's holding that the testator's will demonstrates a clear intention to provide all of his heirs with a bequest of the full $80,000 exercise price of Linda's option to purchase his residence, rather than a bequest of the exercise price minus the outstanding mortgage debt on the residence. Linda is therefore responsible for the mortgage debt.

---

8. We reach this conclusion without giving any weight to Michael and Mary Lou's argument that Linda has breached her fiduciary duty to the other heirs by seeking to interpret the will in the manner most favorable to herself.